THE TRUSTEES OF THE UNIVERSITY OF NORTH CAROLINA and C. S. WINSTEAD v. THE STATE NATIONAL BANK OF RALEIGH and R. W. LASSITER.

*Conversion—Demand—Statute of Limitations—Trusts.*

1. Conversion consists either in the appropriation of the thing to the party's own use; or in its destruction; or in exercising dominion over it in exclusion or defiance of the plaintiff's rights; or in withholding the possession from the plaintiff, under a claim of title, inconsistent with that of the plaintiff, but it must be by *acts*, as bare words will not amount to a conversion.

2. In the case of a conversion by a wrongful taking of the chattel, it is not necessary to prove a demand and refusal; and so the wrongful assumption of the property and of the right of disposing of it, may be a conversion in itself, and render a demand and refusal unnecessary.

3. The statute of limitations will run in favor of one who has converted chattels and applied them to his own use, although the true owner may be ignorant of the conversion.

4. Public securities, such as State bonds, may be converted by retaining them under an assertion of a right to hold them in defiance of the true owner, as well as other property.

.5. Where a trust is created by the agreement of the parties, no length of time will bar the *cestui que trust*, for the possession of the trustee cannot be adverse, unless the trustee repudiate the trust by clear and unequivocal acts or words brought to the notice of the *cestui que trust*, but when it is sought to convert a party who has the legal title into a trustee by a decree, he may insist that his possession was adverse, and be protected by the statute of limitations.

6. So where an express trustee conveys the trust property, in breach of the trust, and his grantee continues to hold adversely, the statute will run in his favor.

7. In causes of action, which under the former practice could have been brought in a Court of law or a Court of equity, the Court of equity will be bound by the statute of limitations as much as the Court of law would.

.8. Where bonds belonging to a corporation were deposited by its treasurer with the defendant as a security for a personal loan, which deposit was a breach of trust but was not known so to be by the defendant, and afterwards a new treasurer of the corporation upon inquiry, was told by the defendant how it held the bonds, the defendant at the same time claiming a right to hold them until the personal loan made to the former treasurer was paid; *It was held*, that this amounted to a conversion of the bonds, the possession of the defendant was adverse, and the statute of limitations began to run from the conversation with the new treasurer.

(*Glover* v. *Riddick*, 11 Ired., 582; *Carraway* v. *Burbank*, 1 Dev., 306; *Hare* v. *Pearson*, 4 Ired., 76; *Hamilton* v. *Shepperd*, 3 Murph., 115; *Blount* v. *Parker*, 78 N. C., 128; *Brickhouse* v. *Brickhouse*, 11 Ired., 404; *Edwards* v. *University*, 1 Dev. & Bat. Eq., 325; *Taylor* v. *Dawson*, 3 Jones Eq., 86; *Uzzle* v. *Wood*, 1 Ired. Eq., 227; *Taylor* v. *Gooch*, 4 Jones, 436; *Burgin* v. *Lenoir*, 1 Car. Law Rep., 117; cited and approved).

CIVIL ACTION, tried before *Avery, Judge,* and a jury, at February Civil Term, 1884, of WAKE Superior Court.

There was a judgment for the plaintiffs, and the defendants appealed.

The facts fully appear in the opinion.

*Messrs. C. M. Busbee* and *E. C. Smith,* for the plaintiffs.
*Messrs. Dan'l G. Fowle, John Gatling,* and *Geo. V. Strong,* for the defendants.

SMITH, C. J.   Robert W. Lassiter, treasurer of the plaintiff, having in custody its funds for safe keeping, deposited with the defendant, the State National Bank, five several bonds of the State, as collateral security for moneys advanced to him, or, as the parties describe the transaction, hypothecated them for that purpose.

Of these bonds, two, numbered 640 and 387, were sold by the Bank on December 8th, 1875, and the three others, numbered 11, 473 and 1854, were in like manner sold, sometime between the 3d day of August and the 14th day of October, 1878, and the proceeds of sales applied according to the conditions of the deposit.

Kemp P. Battle succeeded said Lassiter in office, and on February 24th, 1874, became treasurer and secretary of the University, and continued to be such until June, 1876, when he was elected president, but he still exercised his former functions as treasurer and secretary, until the Fall of 1883.

Soon after his election as treasurer, he demanded from his predecessor in office the books, papers and property belonging to the University, of which the two first mentioned were surrendered, but not the seal nor the public securities.

Having information that three of the State bonds belonging to the land scrip fund, and held by the University under the act of Congress, 12 U. S. Stat. at Large, ch. 130, had been hypothecated with the defendant Bank by Lassiter, he

made inquiry of Williams, its president, when the latter stepped back to the vault, and returned, giving him the numbers 640, 887 and 1854 of the bonds that had thus been deposited with the bank as collateral security. The witness ascertained that two others had been taken from the box in which they were kept, leaving thirty-eight of the forty bonds that belonged there, parcel also of the land scrip fund; he again called on the bank president, and found that those numbered 11 and 473 were also in its possession, having been left there on similar conditions as the others.

In both interviews, which we take it were soon after his appointment to the vacated office, and at least during the year 1874, witness infomed Williams that these securities constituted part of the land scrip fund of the University, and that "Lassiter had no right to hypothecate or to sell them," and he understood that the Bank claimed the possession by reason of the hypothecation. They were not then nor afterwards demanded, nor, so far as the testimony goes, did the Bank indicate any disposition to give them up, except on the terms of such deposit.

For this misapplication of the trust fund, the University brought suit against Lassiter and the sureties on his bond, the summons issued in which was served on the former and the surety Jones, in March, 1876, and on the surety Winstead, one of the present plaintiffs, on May 30th thereafter, and recovered judgment in Wake Superior Court at February Term, 1879, for $4,913.01.

The judgment had been nearly paid when this action was begun on July 30th, 1880, and the residue has been since paid by said Winstead, the only solvent debtor.

Among other defences, not in the view we take of the case necessary to be considered on the appeal, the defendant, in its answer, relies upon the bar interposed by the lapse of time since its liability, if any, was incurred, counting the interval in which the statute was running up to the institu-

tion of the suit, and as against the plaintiff Winstead up to February 23d, 1884, when he filed his amended complaint.

We do not propose to pursue the course of argument of counsel, and discuss, as they have done, with ability and learning, the numerous exceptions taken and points made during the progress of the trial in the Superior Court, since the controversy will be disposed of in considering the preliminary obstacle to the maintenance of the action arising from the delay in bringing it since the right to sue accrued.

If the first misapplication of the funds was without authority and tortious on the part of Lassiter, it would seem not to be less so in the misappropriation to its own use and for the security of the advances made to him on the part of the Bank, for both participate in the tort.

If this use of the fund by Lassiter was rightful, the Bank would not be in fault in retaining possession until the conditions of the hypothecation were met. While making this suggestion, we do not propose to treat the original deposit as *per se* wrongful, since it seems to have had the sanction of the Trustees of the University, but to consider whether the claim made by the Bank, when advised of the want of power in Lassiter to make the disposition of the bonds and that they were the property of the University, to retain them and appropriate the proceeds of their sale for its reimbursement, accompanied with a virtual refusal to restore them, is not a conversion, which instantly exposed them to an action by the owner for their recovery.

"A conversion in the sense of the law of trover," is defined by Mr. Greenleaf in the 2d volume, §642, of his Law of Evidence, as consisting "either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff's right, or in *withholding the possession from the plaintiff, under a claim of title inconsistent with his own.*"

The correctness of this definition is affirmed by NASH, J., who quotes it almost *in totidem verbis,* in delivering the opinion in *Glover* v. *Riddick,* 11 Ired., 582.

In *Carraway* v. *Burbank,* 1 Dev., 306, the defendant administered on an estate, and took into his possession as among the effects, a horse which the intestate held as bailee, and at the sale he bid in the horse himself. The question was, did this amount to a conversion; and the Court so decided. In his opinion, HENDERSON, J., says : " Conversion is an act of ownership, exercised over the personal chattel of another,, inconsistent with the owner's right. It must be an act—bare words will not do." In the same case, TAYLOR, C. J., declares : " If a person purchase another's goods from one having no right to sell them, and takes them into possession, it is assuming upon himself the property and right of disposing of another's goods, and *amounts to a conversion.*"

In *Hare* v. *Pearson,* 4 Ired., 76, DANIEL, J., thus expresses himself on the subject : " The defendant on the day of sale set up a claim to the corn, as his property, but he had shown no title. The plaintiff gave notice to the defendant that he should take away the corn, which he had purchased at the officer's sale. The defendant said that he should not have it, and that he would break every bone in his body before he should carry it away. The Judge charged the jury, that this *was in law a conversion.* * * * We think the charge of his Honor was correct, for a *wrongful dominion and assumption of property in the chattels, is a conversion, and if there be a deprivation of the property by the defendant, it is a conversion.*"

Mr. CHITTY, in his work on Pleading, vol. I., page 153, says, and in this the authorities concur, that " the wrongful taking of the goods of another, who has the right of immediate possession, is of itself a conversion. * * In the case of a conversion by wrongful taking, it is not necessary to prove a demand and refusal. So the wrongful assumption of the

property and right of disposing of goods, may be a *conversion in itself,* and render a demand and refusal unnecessary."

Nor is it material to put the statute in motion, that the exercise of the dominion over the goods, and applying them to the wrong-doer's own use, should be known to the owner. *Hamilton* v. *Shepperd,* 3 Murph., 115; *Blount* v. *Parker,* 78 N. C., 128.

The principle is thus well settled, that the goods of the owner may be converted so as to expose the party to an action, not only by taking an unauthorized possession, but by retaining it under an assertion of right to hold in defiance of such owner, and this may be of public securities as well as of other property. *Brickhouse* v. *Brickhouse,* 11 Ire., 404.

Reverting to the evidence, it is shown that the original deposit and delivery of the bonds to raise money, was an illegal and unwarranted use of them by the officer in whose custody they were placed, though then not known perhaps to the Bank, and when the fact was made known to it, the president claimed the right to hold and apply them according to the terms of the contract, as a collateral security for the loan, and in resistance of the claims of the University, and they were thus subsequently disposed of.

Now, under these circumstances, was a formal demand needed to put the defendant in the wrong, and give the plaintiff a cause of action? The defiant attitude and claim of the Bank, in opposition, was itself a refusal to recognize the plaintiff's right, and with possession, an exercise of dominion over the bonds; and a demand for restitution was substantially denied in advance, and thus dispensed with.

But the plaintiffs' counsel seek to escape from the legal consequences of the long delay, by treating the action as brought by the *cestui que trust* against the depositary as a trustee, calling for an account of the trust fund, to which it is insisted the statute does not apply. The distinction is well marked between trusts expressly created between the

parties, and those declared by the Court, in respect to the operation of the statute of limitations.

We refer to some of the many adjudications in this State pointing out the difference: " In *Edwards* v. *University*, 1 D. & B. Eq., 325, it is settled," remarks PEARSON, J., "upon principle and authority of the cases, that the statute of limitations protects one who has the legal title, and is sought to be converted into a trustee against his consent." *Taylor* v. *Dawson*, 3 Jones Eq., 86.

In a previous case the same learned Judge had thus declared the rule: "Where a trust is not created by agreement of parties, but the person having the legal title is converted by a decree into a trustee on the ground of fraud, he may insist that his possession was adverse, and protect himself under the statute of limitations." *Uzzle* v. *Wood*, 1 Ired. Eq., 227.

And again he says: "The relation between the heirs of Walker and Pannill was that of trustee and *cestui que trust* by agreement of parties. So Pannill's possession for no length of time would divest the title of his trustee, for the simple reason that it could not be adverse." *Taylor* v. *Gooch*, 4 Jones, 436.

The fiduciary may, however, sometimes occupy a hostile relation, and then the statute begins to run. "If a trustee repudiate the trust by clear and unequivocal acts or words, and claims thenceforth to hold the estate as his own, not subject to any trust, and such repudiation and claim are brought to the notice of the *cestui que trust*, in such manner that he is called upon to assert his equitable rights, the statute will then begin to run." 2 Hill Trustees, §864.

"When the trustee makes a conveyance of the trust property, in breach of the trust, and his grantee continues to hold adversely, the statute applies." 2 Dan. Ch. Prac., 1735. We cannot perceive how any express trust was created so as to form that relation between the present plaintiff, whose

property has been diverted to the use of its treasurer by his own attempted tortious disposal of it, in disregard of his own obligation, and the defendant, who participates in the act and takes benefit under it. The fund may be pursued and recovered, because the property has not been changed by the hypothecation, and this by action at law as well, if this be a proper case for equitable interposition, as by suit in a Court of Equity. When the remedy is thus open by either mode of proceeding, no matter which is adopted, the statute is equally available as a defence.

In *Burgin* v. *Lenoir*, 1 Car. L. Rep., 117, HALL, J., for the Court, says: "When suits are brought in this Court, over the subject matter of which Courts of common law, as well as this Court, have jurisdiction, this Court will consider itself as much bound by the statute of limitations as a Court of Law. But in cases where it has exclusive jurisdiction, as in all cases of trusts, the statute does not stand in the way," referring to the class of trusts denominated express, in opposition to those created by decree.

As the action would at once lie against the Bank, when, advised of the plaintiff's claim, it retained and exercised dominion over the bonds and disavowed any right in the plaintiff inconsistent with that derived from the hypothecation made by its faithless officer, it seems to us manifest the statute then began, at least, to run its course, for it is the *right to sue, and the failure to sue*, within the prescribed time, that give efficacy to the statute.

The jury find upon issues submitted to them, that Lassiter had no right to hypothecate the bonds, which then, as defendant knew, belonged to the plaintiff, and were held in trust, and that three years did elapse before the cause of action accrued and before suit was brought as to some of the bonds, to-wit, those sold in 1875. The Court refused to give an instruction asked, that the statute was put in motion by what transpired between the president of the Bank and

Treasurer Battle, and in this there was error, for reasons already stated.

We do not understand why the finding of the application of the bar to the claim for the bonds sold in 1875 is disregarded in the giving of final judment for all, but this could be rectified, if it were the only difficulty in the case, by reforming the judgment. We have not deemed it necessary to inquire into the measure of damages, nor to consider other interesting questions debated at the bar, as our opinion upon the defence arising out of the lapse of time, renders it unnecessary.

There is error, and there must be a new trial.

Error.                                                    Reversed.