## Luke Hart & others *vs.* The Western Rail Road Corporation.

A shop, adjoining a rail road track, was destroyed by fire communicated by a loco motive engine of a rail road corporation; and while the shop was burning, the wind wafted sparks from it, across a street, sixty feet, upon a house, and set it on fire, whereby it was injured.  *Held,* that the owner of the house was entitled to re- cover of the rail road corporation the damages caused by the fire, under *St.* 1840, *c.* 85, § 1, which provides that when any injury is done to a building of any per- son "by fire communicated" by a locomotive engine of a rail road corporation, the said corporation shall be responsible, in damages, to the person so injured.

A.'s house, which was insured, was injured by a fire communicated by a locomotive engine of a rail road corporation, and the underwriters paid to A. the amount of

his loss, for which the rail road corporation was also by law responsible to him. *Held*, that such payment did not bar A.'s right to recover also of the rail road corporation, and that A., by receiving payment of the underwriters, became trustee for them, and, by necessary implication, made an equitable assignment to them of his right to recover of the rail road corporation ; and that the underwriters, on indemnifying A., might bring an action, in his name, for their own benefit, against the rail road corporation, and that A. could not legally release such action.

THIS was an action of trespass upon the case, founded on *St.* 1840, *c.* 85, to recover the amount of a loss which the plaintiffs sustained by a fire alleged to have been communicated to their dwelling-house by a locomotive engine of the defendants. The parties submitted the case to the court, on the following agreed facts :

" On the 9th of July 1845, a carpenter's shop, owned by William W. Boyington, adjoining the rail road track of the defendants, near their passenger depot in Springfield, was destroyed by fire communicated by the locomotive engine of the defendants. There was a high wind, which wafted sparks from this shop, while it was burning, over Lyman Street, sixty feet, upon the dwelling-house of the plaintiffs, and set it on fire, whereby it was partially consumed.

" The plaintiffs were insured by the Springfield Mutual Fire Insurance Company, who requested the plaintiffs to commence a suit against the defendants, to compel payment by them of the plaintiffs' loss, and offered to indemnify the plaintiffs from costs, and to save them harmless, in reference to said suit. The plaintiffs refused to commence a suit, as requested, but demanded the amount of their loss of the said insurance company, who paid the same, first notifying to the defendants that they did not intend thereby to relinquish any claim which they might have against the defendants for the amount, in their own or in the plaintiffs' names. The insurance company, in the name of the plaintiffs, then brought this action to recover the amount paid by said company to the plaintiffs. After the action was commenced, and before the entry of the writ, the plaintiffs executed an instrument, declaring that they had received payment of their loss, of the insurance company · that they had no claim against the

defendants ; that they (the plaintiffs) had not authorized the commencement of this action against the defendants, and did not wish to have it prosecuted ; and fully releasing any claim which they might have against the defendants on account of said loss.

" At the May term of this court, in 1847, the case was opened to the jury, and the defendants presented the aforesaid release from the plaintiffs, and contended that the insurance company, in consequence of this release, could not maintain this action.   The court ruled, that receiving payment of the loss by the plaintiffs of the insurance company, constituted an equitable assignment, by the plaintiffs, to the company, of any claim they might have had.   Whereupon the parties agreed the facts before recited in relation to the origin of the fire.

" In case the court are of opinion, that receiving payment, by the plaintiffs, of the insurance company, amounted to an equitable assignment by them of any claim they might have had against the defendants ; that the release referred to was in fraud of the insurance company ; and that the defendants are liable for the loss, on the facts stated, the plaintiffs are to have judgment for the sum of $623·65 damages, and interest on this sum, from the 14th of November 1845.   Otherwise, the plaintiffs are to become nonsuit."

*J. Willard & R. A. Chapman*, for the plaintiffs.   By *St.* 1840, *c.* 85, § 1, " when any injury is done to a building, or other property, of any person or corporation, by fire communicated by a locomotive engine of any rail road corporation, the said rail road corporation shall be held responsible, in damages, to the person or corporation so injured."   And the question now is, whether underwriters, who have paid a loss caused by a fire so communicated, can come in, by subrogation, and recover of the rail road corporation, in the name of the assured, the amount of such loss.   The following authorities show that they can.   *Tyler* v. *Ætna Fire Ins. Co.* 12 Wend. 507, and 16 Wend. 397 *& seq.* 1 Phil. Ins. (1st ed.) 464.   2 ib. 282.   *Godsall* v. *Boldero*, 9 East, 72.   *New York*

9 *

*Ins. Co.* v. *Roulet*, 24 Wend. 505, 516.   *Richardson* v. *Washington Bank*, 3 Met. 536.  · *Carpenter* v. *Providence Washington Ins. Co.* 16 Pet. 495.   *Bryant* v. *Dana*, 3 Gilman, 349.

In such case, the nominal plaintiff cannot legally discharge the claim.   *Dunn* v. *Snell*, 15 Mass. 481.   *Parker* v. *Grout*, 11 Mass. 157, *note.*   *Jones* v. *Witter*, 13 Mass. 304.

*Phelps*, for the defendants.   To constitute an equitable assignment, there must be some written agreement, or some order, showing a transfer for the benefit of the assignee.   2 Story on Eq. § 1047.   *Morton* v. *Naylor*, 1 Hill (N. Y.) Rep. 583.   In all the cases, in this Commonwealth, in which an assignment has been supported, there has been some act of the assignor.   See 15 Mass. 11 Mass. and 13 Mass., cited for the plaintiffs.   *Eastman* v. *Wright*, 6 Pick. 316.   *Dennis* v. *Twitchell*, 10 Met. 180.   In the case at bar, the plaintiffs refused to assign their claim, and gave a release to the defendants, on receiving payment of their loss.

It is said that the doctrine of subrogation does not rest on agreement, but on natural equity.   Most of the cases in this Commonwealth are cases of sureties, where the equity is manifest.   But the defendants are not sureties for the insurance company.   And what equity is there that the insurance company, which has received its premium for insurance, should receive full indemnity from the defendants, who are involuntarily liable by a kind of penal statute ?

The defendants are liable for loss by fire, if at all, only by virtue of *St.* 1840, *c.* 85 ; and this statute is to be construed strictly, because it takes away from the defendants a common law right.   The fire, against which the plaintiffs were insured, was not " communicated by a locomotive engine " of the defendants to their building, but from the house which was set on fire by sparks from the engine.   The proximate cause of the fire, and that cause only, should be regarded.   Otherwise, the defendants might be made liable for the burning of a whole city.

The decision was made at September term 1848.

SHAW, C. J. This is an action of first impression, and is, we believe, the first brought upon the *St.* of 1840, *c.* 85, involving the present question. The action is brought, in fact, by the Springfield Mutual Fire Insurance Company, for their own benefit, in the name of the present plaintiffs, under the circumstances mentioned in the agreed statement of facts, on which the case was submitted to our decision.

1. The first question in order, it appears to us, is, whether, upon the facts stated, the defendants were liable to any body, and for any loss, by force of *St.* 1840, *c.* 85; the defendants insisting that the case is not within the statute. The statute provides, § 1, that " when any injury is done to a building or other property of any person or corporation, by fire communicated by a locomotive engine of any rail road corporation, the said rail road corporation shall be held responsible, in damages, to the person or corporation so injured."

It is contended that the plaintiffs' building was not burnt by fire communicated by a locomotive engine, within the meaning of the statute. And the case certainly presents a question of great importance, and of great difficulty. On the one hand, if the word " communicated " is used in the broad sense in which, without force or violence done to the language, it may be, to include all burnings, when a fire is communicated by the engine directly to one building, and thence by natural and ordinary means extending to others, without the intervention of any other means, the effect would be to charge the rail road company with damages to an unlimited amount, when a fire, thus originating in a village or city, has spread into a wide conflagration. The argument is earnestly urged, that the legislature could not have intended to impose a responsibility so serious and alarming ; and it is insisted that the term " communicated " will bear, and ought to receive, a construction more limited, so as to restrain the operaion of the statute to the case where the very particles of fire which fall upon, and kindle the flame in, the building burnt, must have emanated from the engine itself, without the intervention of any other object. If so restricted a sense as the

latter had been intended by the legislature, it seems strange that they did not add some qualifying word, as "immediately" or "directly," to the word "communicated." Perhaps some light may be derived from a subsequent clause in the same section of the statute, which provides, that "any rail road corporation shall have an insurable interest in the property for which it may be so held responsible, in damages, *along its route,* and may procure insurance *thereon* in its own behalf." These latter words, we think, describe buildings being near and adjacent to the route of the rail road, so as to be exposed to the danger of fire from engines, but without limiting or defining any distance. In this view of the statute, it seems difficult to lay down any general rule. From the language made use of, we cannot think it was intended to limit its operation to the very first building which might be touched with a spark or other fire from the engine, and not extend it to another building, contiguous though it may be, but belonging to another owner, which must necessarily burn with it.

In the present case, the fire was transmitted, by ordinary and natural means, from the shop first touched by sparks from the engine, to the plaintiffs' dwelling-house, immediately across a street not very wide. The building burnt was, then, near the route of the rail way. Under these circumstances, the court are of opinion, that the plaintiffs' house was injured by fire communicated by the locomotive engine of the defendants, within the true meaning of this statute, and that they are thereby held responsible, in damages, to the plaintiffs, the persons injured.

2. The next question is, whether the insurance company, having, pursuant to their contract of indemnity, paid the loss to the plaintiffs, are entitled to maintain this suit in the plaintiffs' name, but for their own benefit, to recover the damages to which the defendants are liable by the statute.

We consider this to be a statute purely remedial, and not penal. Rail road companies acquire large profits by their business. But their business is of such a nature as necessarily to expose the property of others to danger; and yet, on

account of the great accommodation and advantage to the public, companies are authorized by law to maintain them, dangerous though they are, and so they cannot be regarded as a nuisance. The manifest intent and design of this statute, we think, and its legal effect, are, upon the considerations stated, to afford some indemnity against this risk to those who are exposed to it, and to throw the responsibility upon those who are thus authorized to use a somewhat dangerous apparatus, and who realize a profit from it. This indemnity, provided by law against a special risk, may be considered as a quality annexed to the estate itself, and passing with it to any and all persons who may stand in the relation of owners, however divided and distributed such ownership may be. The effect of the statute is, to diminish the specific risk to which such buildings may be exposed, from their proximity to the railroad, and in this respect to put them upon an equality with other risks.

Now, when the owner, who *prima facie* stands to the whole risk, and suffers the whole loss, has engaged another person to be at that particular risk for him, in whole or in part, the owner and the insurer are, in respect to that ownership and the risk incident to it, in effect one person, having together the beneficial right to an indemnity provided by law for those who sustain a loss by that particular cause. If, therefore, the owner demands and receives payment of that very loss from the insurer, as he may, by virtue of his contract, there is a manifest equity in transferring the right to indemnity, which he holds for the common benefit, to the assurer. It is one and the same loss, for which he has a claim of indemnity, and he can equitably receive but one satisfaction. So that, if the assured first applies to the rail road company, and receives the damages provided, it diminishes his loss *pro tanto*, by a deduction from, and growing out of, a legal provision attached to, and intrinsic in, the subject insured. The liability of the rail road company is, in legal effect, first and principal, and that of the insurer secondary; not in order of time, but in order of ultimate liability. The assured may

first apply to whichever of these parties he pleases; to the rail road company, by his right at law, or to the insurance company, in virtue of his contract. But if he first applies to the rail road company, who pay him, he thereby diminishes his loss, by the application of a sum arising out of the subject of the insurance, to wit, the building insured, and his claim is for the balance. And it follows, as a necessary consequence, that if he first applies to the insurer, and receives his whole loss, he holds the claim against the rail road company in trust for the insurers. Where such an equity exists, the party holding the legal right is conscientiously bound to make an assignment, in equity, to the person entitled to the benefit; and if he fails to do so, the *cestui que trust* may sue in the name of the trustee, and his equitable interest will be protected.

But we think this position is exceedingly well sustained by authorities. A case very much in point, in principle, is that of *Mason* v. *Sainsbury*, first reported as a manuscript case, in Marshall on Insurance, (1st Amer. ed.) 691, and since in 3 Doug. 61. It was an action against the hundred, brought on the riot act, to recover damage sustained by the plaintiff in the riots of 1780. The plaintiff had an insurance on which he had recovered, the insurance office having paid him without suit; *and this action was brought in the name of the* plaintiff, with his consent, for the benefit of the insurance company. It was decided by Lord Mansfield, and the whole court, that the plaintiffs were entitled to recover. Buller, J. said it was to be treated as an indemnity, in which the principle is, that the insurer and the insured are as one person, and the paying by the insurer, before or after, can make no difference. The same doctrine was fully recognized by the court of king's bench, in 1823, in the case of *Clark* v. *The Hundred of Blything*, 3 Dowl. & Ryl. 489, and 2 Barn. & Cres. 254. It goes upon the ground, that the hundred are liable at all events, and the private contract of insurance, dividing the risk, makes no difference in the owner's right to recover. It was likened by Lord Mansfield and Ashhurst, J. in 3 Doug

51, to the case of abandonment, in marine insurance, where the insurer is constantly put in the place of the insured.

A similar case afterwards came before the court of common pleas, in 1838, and was very elaborately argued, and the principle above stated confirmed. *Yates* v. *Whyte*, 4 Bing. N. R. 272, and 5 Scott, 640. It was a case of collision at sea, in which the plaintiff claimed damages, sustained by reason of the defendant's vessel having run foul of his vessel, through the defendant's negligence. The plaintiff had recovered of the underwriters on his vessel a certain sum for the same loss, and the defendant contended that this sum should be deducted; but it was held that this was no answer, and that the sum thus paid by the insurers ought not to be deducted. This case was also distinguishable from the former in this respect; that, in this, the suit was not brought at the instance of the insurers. But the court clearly intimated, that the owners, having an absolute right, could recover their damages in that suit, and that if, under an indemnity against the same loss, he had already received payment, the money recovered in this suit would be held in trust for the insurers who had thus paid. It would be in the nature of salvage, received by the assured after payment of a total loss. This was distinctly held by Lord Hardwicke, in *Randal* v. *Cockran*, 1 Ves. sen. 98. Where owners of vessels, unjustly captured by the Spaniards, had received compensation from the underwriters, and afterwards, upon letters of marque and reprisal, granted by the government against the Spaniards, the owners received compensation, it was decided that the owners held the money, so received, in trust for the underwriters, in the nature of salvage. This was a case in chancery; but where the same principle can be carried into effect in the ordinary forms of proceeding, in a court of law, the same principle will be applied. If the trust consists in an equitable liability to pay money, it will be recognized and enforced in a suit at law.

It is clear that the assured has a right to recover against the insurer, although he has a remedy, at the same time, against the party by law liable. Thus, in *Cullen* v. *Butler*, 5 M. &

S. 466, it is stated, by Lord Ellenborough, that it is no objection to the plaintiff's right to recover of the underwriter, that he may have a right also to recover against the person by whose immediate act the damage was occasioned. This being true, and it being also true, that a recovery against the underwriter is no bar to a suit by the assured against the party primarily liable, it follows, as a necessary consequence, that after a payment by the insurer, by compulsion of legal process or voluntarily, the assured becomes trustee for the insurer, and by necessary implication makes an equitable assignment to him of the right so to recover. See opinion of Kent, C. J. in *Gracie* v. *New York Ins. Co.* 8 Johns. 245.

There is a more recent case bearing upon the question of the right of underwriters, after payment of a loss, to claim salvage, obtained by the assured, the result of which may seem opposed to the above cases, because the underwriters did not recover back. *Brooks* v. *Mac Donnell*, 1 Y. & Coll. Exch. Rep. 500. But it will appear, from that case, that the doctrine herein above stated was affirmed at the bar and by the court; and that the case was decided upon the ground that an abandonment had been refused, and a certain sum had been paid, by agreement, as a compromise of all claims on both sides.

In regard to the right of the insurance company to sue in the name of the assured, we think the cases fully affirm the position, that by accepting payment of the insurers, the assured do implicitly assign their right of indemnity, from a party liable, to the assured. It is in the nature of an equitable assignment, which authorizes the assignee to sue in the name of the assignor, for his own benefit; and this is a right which a court of law will support, and will restrain and prohibit the assignor from defeating it by a release. The formal discharge, therefore, given by the nominal plaintiffs, is not a bar to the action. See *Payne* v. *Rogers*, 1 Doug. 407. *Whitehead* v. *Hughes*, 2 Crompt. & Mees. 318. *Phillips* v. *Clagett*, 11 Mees. & Welsb. 84. *Timan* v. *Leland*, 6 Hill, 237 Browne on Actions, 105. *Judgment for the plaintiffs.*