This is an appeal from an order allowing certain insurance companies to institute an action against the receiver of the Wake Water Company that was under contract, at the time of the injuries complained of, to furnish the city of Raleigh and its inhabitants with water and to perform other obligations.
It is alleged in the petition that the property of the News and Observer Company was destroyed by fire on account of the negligence of the water company; that at the time of the loss of the property was insured in the companies of the petitioners; that the amount of the insurance has been paid to the publishing company, and that the receiver has settled the claim of the publishing company in excess of the (291) insurance.
The receiver denies negligence, but contends that if this is established there is no right of action in the insurance companies, for the following reasons:
1. That under the contract between said Wake Water Company and the city of Raleigh, a copy of which is attached to said order, it is provided as follows:
The said water company "shall hold the said city harmless from any and all damages arising from negligence or mismanagement of said water company, or its employees in constructing, extending, or operating said works."
That this contract in effect provides that the water company will indemnify and hold harmless the city, and that by its terms the water company was dealing exclusively with the city and was accountable only to it, and that the city only must sue for its breach. Therefore, there was no cause of action in the News and Observer Publishing Company, and consequently none in the petitioning insurance companies, who claim under the News and Observer Publishing Company.
2. That if there was any cause of action in the News and Observer Company for the alleged breach of said contract, the entire and sole cause of action was in said publishing company, and the right of recovery for the entire damage caused by the water company was in the News and Observer Publishing Company, and the fact that the News and Observer Publishing Company had insurance covering a part of its alleged loss and had collected said insurance was not a defense available to the water company when sued by the publishing company, but the News and Observer Publishing Company held any amount collected from the Wake Water Company as trustee for the insurance companies after it was fully compensated; therefore, the compromise approved by court of the suit brought by the News and Observer Publishing Company, *Page 347 
"the dominus litis," and the release executed by the publishing company, in the absence of any allegations or suggestions of fraud, was a bar to the prosecution of any suit by the insurance companies, the said release by the News and Observer Publishing Company being as follows:
$12,500. RALEIGH, N.C. 15 December, 1914.
Received of William B. Grimes, receiver of Wake Water Company, the sum of $12,500 in full settlement, satisfaction, and discharge of all claims and demands of the News and Observer Publishing Company against W. B. Grimes, John A. Mills, and Fred C. Boyce, Jr., receivers of Wake Water Company, and the Wake Water Company, or any of them, and of the order of Wake Superior Court, directing the payment of said sum to said publishing company and of all things required of W. B. Grimes, John A. Mills, and Fred C. Boyce, Jr., receivers of Wake Water Company, and the Wake Water Company, or any of (292) them, pursuant to the paper-writing of compromise, release, and indemnity dated 9 December, 1914, and signed by said News and Observer Publishing Company.
 THE NEWS AND OBSERVER PUBLISHING COMPANY, By W. H. BAGLEY, Business Manager. JONES BAILEY, Attorneys for the News and Observer Publishing Company.
3. That the said insurance companies knew at the time they made payment of the loss under their policies, to wit, on 12 September, 1913, that said water company was in the hands of a receiver, and that the News and Observer Publishing Company had brought suit against the receiver of the Wake Water Company for the damages by reason of the alleged negligent failure to furnish water and pressure, and none of said petitioning insurance companies applied to be made parties, and said suit was not compromised until December, 1914, and none of said insurance companies asked leave to sue until January, 1915, or filed with said receiver any claim until 23 November, 1915, after said compromise and settlement had been carried out and the $12,500 paid under the order of the court by its receiver, though said insurance companies knew on 27 May, 1913, that the water company was in the hands of a receiver, and the time for filing claims expired 15 July, 1913, and under the facts as found by the court the said insurance companies have no right of action against the water company or its receiver, and said insurance companies have been negligent in asserting their pretended claims.
4. That the loss by said fire to the property covered by all insurance policies was appraised and adjusted by said insurance companies in *Page 348 
May, 1913, at $41,265.50, and the total insurance in force and paid was $26,901.24, which, added to the $12,500 collected from the water company by the compromise approved by the court, amounts to $39,401.24, which is about $2,000 less than the loss to the property covered by all insurance, and the News and Observer Publishing Company alleges its total damage was $110,951.48. The insurer has no right of subrogation until the insured is fully indemnified. The News and Observer Publishing Company was asserting a $100,000 claim against the water company; the water company and its receivers were denying any liability. The News and Observer Publishing Company was afraid it would get nothing; the water company was afraid it would have to pay the full $75,000 for which the News and Observer was authorized to bring suit; the suit was pending a year and a half, and each side, acting for what it considered its best interest, compromised for $12,500, which was approved by the court. The water company insists that it compromised with "the lord of the litigation," and it compromised all matters growing out of the fire, and that under the facts it should not be (293) subject to the cost and expense of another suit. If this course is permitted, the other companies who paid the additional $12,000 of insurance not embraced by this order may later separately and jointly apply for leave to sue, and the water company will be subjected to the cost and expenses of three or more suits for one alleged tort — which is against the settled principle of the law, "that a defendant shall not be subjected to the two actions by different parties for the same wrong."
5. That the insurance companies ought not to sue, for that it was found as a fact that they had not paid the full value of the loss to the property insured, and until the total loss is paid, the right of action is in the insured and the right of the insurer must be worked out through the insured and the insurer can and must take timely action to protect its rights.
6. That neither said publishing company nor any of said insurance companies were parties or privies to said contract between said water company and said city of Raleigh, and hence none of them have any right to sue said water company or its receiver.
The following order was made upon the petition to sue, in which appears the findings of fact of his Honor:
Upon consideration of the petition of the Orient Fire Insurance Company of Hartford, Conn., the Virginia Fire and Marine Insurance Company, Springfield Fire and Marine Insurance Company, the Hartford Insurance Company, New York Underwriters Agency, British-American Assurance Company, the Dixie Fire Insurance Company, the Sun Insurance Company, Niagara Insurance Company, Fire Association of Philadelphia, Pennsylvania Fire Insurance Company, for leave to sue *Page 349 
the receiver of the Wake Water Company heretofore appointed by order of this court, it is considered and ordered, after considering the petition, the answer filed, and the argument of counsel, that the said petitioners have leave of the court to sue the receiver of the Wake Water Company and to bring one independent action against said receiver, joining in one action their demands and causes of action against the said receiver.
It is further ordered that the said petitioners give bond in the sum of $1,000 to secure the costs to be incurred by the receiver in the defense of said action, with surety approved by the clerk of this court, if it shall be finally adjudged that the said petitioners are required to pay said costs.
The said court, being requested by attorneys for receiver of Wake Water Company to find the facts, does find the following facts:
That W. B. Grimes was appointed receiver of the defendant Wake Water Company on 29 August, 1912, and at once qualified and entered upon the discharge of his duties as such receiver.
That pursuant to order of court in said action, a notice was (294) published in the Baltimore Sun and in the Raleigh EveningTimes for twenty days commencing 30 May, 1913, notifying all parties having claims against the said water company or the receiver thereof to file the same with said receiver on or before 15 July, 1913, and further giving notice that all parties who failed to so file their claims would be barred from participating in the distribution of the assets of said water company, a copy of which notice is attached to the amended answer to the petition herein.
That the petitioners above named had issued policies of fire insurance upon the property of the News and Observer Publishing Company, situated in the city of Raleigh, N.C. which property was destroyed or damaged by fire on 24 April, 1913, and that the petitioners paid to the said News and Observer Publishing Company several amounts aggregating $4,995.50, and that the said petitioners filed with the receiver an itemized statement of said amounts on 23 November, 1915.
That heretofore, to wit, in July, 1913, the News and Observer Publishing Company brought suit, by leave of this court granted, against the receiver of the Wake Water Company, and in the complaint filed 21 November, 1913, in said action it was alleged that the News and Observer Publishing Company carried insurance upon the property damaged and destroyed by fire to the amount of $26,901.24, and the defendants in said action in answer filed admitted the fact of insurance, but denied upon information and belief the amount thereof.
That the said publishing company alleged in its complaint the value of the property destroyed to be $110,951.48, and prayed judgment for the difference, $89,050,24, a copy of which said complaint is attached *Page 350 
to said amended answer. That thereafter in said action the plaintiffs and the defendants comprised the matters involved in said litigation, and a judgment was entered at the December Term, 1914, of this court dismissing the action brought by the plaintiff and adjudging that each party pay its costs, the matters and things having been settled by agreement; and in this action as above entitled an order was made approving the settlement between the News and Observer Publishing Company and the receivers of the Wake Water Company and the payment of $12,500 by the said receiver to the said News and Observer Publishing Company in settlement of the demands of the said News and Observer Publishing Company, a copy of which release is attached to said amended answer; but that previous thereto, to wit, in September, 1913, the petitioners received from the said News and Observer Publishing Company a subrogation contract in the form a copy of which is attached.
 That none of said insurance companies applied to be made parties to the suit brought by said publishing company.
(295) That the loss by said fire to the property covered by all insurance policies was appraised and adjusted by said insurance companies on 27 May, 1913, at $41,265.50, and that settlement subsequently made by said insurance companies was made upon that appraisement and adjustment.
That said insurance companies at the time of such appraisement and adjustment knew that said water company was in the hands of a receiver, and at the time of the payment by them of the loss under their policies on 12 September, 1913, knew that said water company was in the hands of a receiver, and that said publishing company had brought suit against the receiver of said water company for damages by reason of alleged negligent failure to furnish water and pressure to extinguish said fire.
That the contract between the Wake Water Company and the city of Raleigh was made in 1906, a copy of which is attached hereto, and that the first five of said petitioners filed a petition in this action to be allowed to sue the receiver in January, 1915, and the same had been continued from time to time to this term of court, and the rest of said petitioners filed petition for leave to sue on 23 November, 1915.
Upon the foregoing facts the court finds that the petitioners have aprima facie cause of action and right of action against the receiver. And it is further found as a fact by the court that the receivers of the Wake Water Company have not yet distributed all the funds in their hands arising from the sale of the property of the said Wake Water Company, but they now have in hand sufficient funds to meet the demands of the petitioners. *Page 351 
This order is made without prejudice to any defense which the Wake Water Company or the receiver thereof or any of the defendants herein may see fit to interpose to any of said proposed suits. R. B. PEEBLES, Judge Presiding.
The receiver excepted and appealed.
The provisions in the contract between the city of Raleigh and Wake Water Company upon which the receiver relies to take this case out of the principle adopted in Gorrell v. Water Co., 124 N.C. 328, are in substance the same as those in the contracts considered in Jones v. Water Co.,135 N.C. 553, and Morton v. Water Co., 168 N.C. 582, and we therefore hold, following these authorities, that the News and Observer Publishing Company had a right of action against the defendants as receivers of the Wake Water Company upon the allegations of negligence contained in the petition.
If so, have the petitioners, the insurance companies, who have (296) paid the loss in part, any interest in this right of action which can be maintained in their own name?
When property, upon which there is insurance, is destroyed or damaged by the wrongful act of another, the liability of the wrong-doer is primary and that of the insurer secondary, not in order of time, but in order of ultimate liability; the right of action is for one indivisible wrong, and this abides in the insured, through whom the insurer must work out his rights upon payment of the insurance, the insurer being subrogated to the rights of the insured upon payment being made. Hall v. R. R., 80 U.S. 367;R. R. v. Jurey, 111 U.S. 595; Phoenix Ins. Co., 117 U.S. 321; R.R. v. Ins. Co., 139 U.S. 235.
"The right (of subrogation) arises not out of the contract between the insured and the insurer, but has its origin in general principles of equity" (14 Mod. Am. L., 159), and in this respect the standard form of policy, which has been adopted by legislative enactment (Rev., sec. 4760), in making provision for subrogation, is but declaratory of principles already existing.
The great weight of authority is in favor of the position of the receiver, that when the loss exceeds the insurance, as the cause of action is indivisible and the right of the insurer is not because of any interest in the property destroyed or damaged, and is enforced upon the equitable principle of subrogation, the action must be brought by and in the name of the owner of the property, and that he is entitled to *Page 352 
recover the entire damages, without diminution on account of the insurance, and that he holds the recovery first to make good his own loss, and then in trust for the insurer; but if the insurance paid equals or exceeds the loss or damage, as the insured in that event has no further beneficial interest, the insurer is entitled to be subrogated to the entire cause of action of the insured, and the action may be maintained in the name of the insurer or of the insured to the use of the insurer. Ins. Co. v. Oil Co., 59 Fed., 987; R.R. v. Pullman Co., 139 U.S. 87; Ex Parte Ins. Co.,86 S.C. 54;Ins. Co. v. Frost, 37 Ill. 335; Ins. Co. v. R. R., 25 Conn. 277; Ins. Co.v. Lainsburg, 3 Doug., 245; Ins. Co. v. Mosher, 39 Me. 256; Ins. Co. v. R.R., 41 S.C. 412; Ins. Co. v. L. Co., 93 Mich. 139; AEtna Ins. Co. v.Hannibal, 3 Dill., 1; Hart v. R. R., 54 Mass. 108; Swarthout v. R. R.,49 Wis. 629; R. R. v. Loker, 68 Kan. 244; Ins. Co. v. R. R., 20 Ore., 269;Rankin Co. v. R. R., 82 Vt. 390; R. R. v. Shutt, 24 Okla. 102; R. R. v.Blount, 165 Fed., 261; Tel. Co. v. Watts, 66 Fed., 460; Hampton v. PowerCo., 124 La. Ann., 570; 19 Cyc., 893 and notes.
The case from Kansas is also reported in 1 A. and E. Anno. Cases, 883, and the case from Vermont in 18 A. and E. Anno. Cases, 708, where there are full notes collecting the authorities.
(297) The controlling principles and the conclusions reached by the courts are stated accurately in the first case cited from the Circuit Court of Appeals as follows:
"When an insurance company pays to the insured the amount of a loss of the property insured, it is subrogated in a corresponding amount to the assured's right of action against any other person responsible for the loss. This right of the insurer against such other person is derived from the assured alone, and can be enforced in his right only. At common law it must be asserted in the name of the assured. In a court of equity or of admiralty, or under the modern codes of practice, it may be asserted by the insurance company in its own name, when it has paid the insured the full value of the property destroyed. St. Louis, I. M. and S. Ry. Co. v.Commercial Union Ins. Co., 139 U.S. 223, 235, 11 Sup. Ct., 554, and cases cited; Marine Ins., Co. v. St. Louis, I. M. and S. Ry. Co., 41 Fed., 643. But the rule seems to be well settled that when the value of the property exceeds the insurance money paid, the suit must be brought in the name of the assured. AEtna Ins. Co. v. Hannibal and St. J. R., Co., 3 Dill., 1, Fed. Cas., No. 96; Assur. Co. v. Sainsbury, 3 Doug., 245; Ins. Co. v.Bosher, 39 Me. 253; Hart v. R. R. Corp., 13 Metc. (Mass.), 99;Connecticut, etc., Ins. Co. v. New York, etc., R. Co., 25 Conn. 2, 65,278; Insurance Co. v. Frost, 37 Ill. 333; Fland Ins., pp. 360, 481, 591;Marine Ins. Co. v. St. Louis, I. M. and S. Ry. Co., supra. In such an action the assured may recover *Page 353 
the full value of the property from the wrong-doer; but as to the amount paid him by the insurance company he becomes a trustee, and the defendant will not be permitted to plead a release of the cause of action from the assured or to set up as defense the insurance company's payment of its part of the loss. Hart v. R. R. Corp., supra; Hall v. R. R. Co., 13 Wall., 367. In support of this rule it is commonly said that the wrongful act is single and indivisible and can give rise to but one liability. "If," says JudgeDillon in AEtna Ins. Co. v. Hannibal and St. J. R. Co., supra, "one insurer may sue, then, if there are a dozen, each may sue; and if the aggregate amount of all the policies falls short of the actual loss, the owner could sue for the balance. This is not permitted, and so it was held nearly a hundred years ago, in a case whose authority has been recognized ever since both in Great Britain and in this country."
The cases of Ins. Co. v. R. R., 132 N.C. 75, and Cunningham v. R. R.,139 N.C. 427, belong to this latter class, as in each the insurance was equal to or exceeded the loss.
It is also generally held that there is no right to subrogation until the insurance is paid, and that when the right once attaches it cannot be destroyed or extinguished by a release or discharge executed by the insured. Ins. Co. v. Oil Co., 59 Fed., 987; Hart v. R. R.,54 Mass. 100; Ins. Co. v. R. R., 73 N.Y. 405; Swarthout v. R. R., (298)49 Wis. 628; Ins. Co. v. Hutchinson, 21 N.J. Eq., R. R. v.Ins. Co., 59 Kan. 435.
"After the loss has been paid by the company, the wrong-doer, having knowledge of the fact, cannot make settlement with the insured for the loss, his liability being to the company to the extent of the insurance paid." 19 Cyc., 895, and cases in note.
"In regard to the right of the insurance company to sue in the name of the assured, we think the cases fully affirm the position that by accepting payment of the insurers the assured do impliedly assign their right of indemnity from a party liable to the assured. It is in the nature of an equitable assignment, which authorizes the assignee to sue in the name of the assignor for his own benefit; and this is a right which a court of law will support, and will restrain and prohibit the assignor from defeating it by a release. The formal discharge, therefore, given by the nominal plaintiffs, is not a bar to the action." Hart v. R. R., 54 Mass. 100.
"The courts have likewise been very firm in supporting the right of the insurance company to bring an action in the name of the assured, and will not allow the latter to defeat such action, even by a release or discharge of the person by whose act the damage was occasioned." Swarthout v. R. R., Wis., 628. *Page 354 
"It is also settled that if the railroad company had not paid Hutchinson his damages, or had paid them to him, knowing that he had received the amount insured from the complainants, that they are liable to the complainants in a suit at law, which they have the right to bring in the name of Hutchinson, without his consent, to repay them the damages to the amount of the sum paid by them, and that a release by Hutchinson would be no defense to such suit." Ins. Co. v. Hutchinson, 21 N.J. E.
The case from New York is in many respects like the one before us. There the loss was greater than the insurance, and the owner settled with the wrong-doer for the difference between the value of the property and the insurance, reserving the right to the insurance, and executed a release, and it was held that the insurer could maintain his action; and the reasoning in the case from Kansas on a similar state of facts leads to the same result.
It would seem, therefore, that the following principles are established:
1. That the right of action to recover damages from the wrong-doer is in the insured, and that this right of action is one and indivisible.
 2. That upon payment of the insurance the insurer is subrogated to the rights of the insured as against the wrong-doer.
(299) 3. That if the insurance is equal to or exceeds the loss, this right of subrogation extends to the whole right of action in the insured, and operates as an equitable assignment, and the action may thereafter be prosecuted in the name of the insurer.
4. That if the insurance is less than the total loss, the right of subrogation still exists; but as the right of action is indivisible, and as the insurer has only paid a part of the loss and is not entitled to an assignment of the whole cause of action, the action must be prosecuted in the name of the insured.
5. That a release by the insured does not extinguish the right of subrogation.
They also seem to establish the proposition that if the insurance is less than the loss, and the insured has settled the difference between the insurance and the total loss with the wrong-doer, leaving unsettled only the amount of damages, measured by the insurance, that the cause of action for this damage would be in the insurer, for the reason that the insured has parted with all beneficial interest in the right of action, and, while the cause of action was indivisible, it has been divided by the act of the parties.
Applying these principles, we are of the opinion that there is no error in granting the prayer of the petitioners, as it appears that the News and Observer Publishing Company alleged in its complaint *Page 355 
against the receiver of the Wake Water Company that the value of the property destroyed was $110,951.48, that the insurance on the same amounted to $26,901.24, and that it asked for judgment for the difference between the two amounts; and it further appears that the claim of the publishing company has been settled with the knowledge of the payment of the insurance.
The receiver has the right to be relieved from a multiplicity of suits, and the petitioners or the receiver may require all insurance companies that have participated in the payment of the loss to the publishing company to be made parties to the action.
This opinion is based on the facts alleged in the petition, as the petitioners are not now required to do more than make out a prima facie
right to sue.
We make no intimation on the issue of negligence, which the petitioners must establish, as none of the evidence bearing upon negligence is before us.
We further reserve the question of laches, and whether the right to subrogation may prevail as against the owner of bonds secured by mortgage or trust deed, until the facts are fully developed.
Affirmed.