WHALEHEAD PROPERTIES, A PARTNERSHIP v. COASTLAND CORPORATION, OCEAN SANDS PROPERTY OWNERS ASSOCIATION, INC. AND OCEAN SANDS, INC.

No. 124

(Filed 1 February 1980)

1. **Appeal and Error § 6.2— right of appeal—final judgment—interlocutory order affecting substantial right**

    A right of appeal lies from the final judgment of superior court or from an interlocutory order of the superior court which affects some substantial right. G.S. 1-277; G.S. 7A-27(b).

2. **Appeal and Error § 6.2— finality of judgment—appeal from summary judgment order**

    Where plaintiff's first cause of action was settled by consent, summary judgment granting plaintiff a permanent injunction was entered on plaintiff's second cause of action, plaintiff's third cause of action sought a declaratory judgment that its redesigned plans for development of its property complied with an agreement of the parties, and the court found that the development plans did not comply with the agreement and entered summary judgment for defendants, plaintiff received a final judgment as to all its causes of action and could appeal from the court's order entering summary judgment for defendants on its third cause of action.

Whalehead Properties v. Coastland Corp.

3. **Appeal and Error § 6.2— breach of contract—summary judgment establishing liability—rejection of specific performance—appealability of order**

Where the trial court granted summary judgment establishing plaintiff's liability for breach of an agreement to redesign its plan for development of its property to comply with the "Currituck Plan" for development of outer banks property, but the court rejected defendants' claim for specific performance of the contract and ordered the issue of damages to be determined at a subsequent trial, the denial of defendants' claim for specific performance prior to hearing evidence on the question of damages affected a substantial right of defendants and was appealable, since the court's preemptory denial of specific performance will preclude defendants from seeking such relief at the trial on the issue of damages, and by the time final judgment is rendered on defendants' claim plaintiff may have been able to develop its property in a manner not in compliance with its agreement.

4. **Contracts § 20.1— breach of contract—no impossibility of performance**

Plaintiff was not excused on the ground of impossibility of performance from compliance with its contract with defendant to redesign its plans for development of its property to comply with the "Currituck Plan" for development of outer banks property, which required a central water and sewer system, and the trial court properly entered summary judgment for defendants establishing plaintiff's liability for breach of the agreement, where (1) the evidence on motion for summary judgment tended to show that, although Currituck County had adopted a new "Land Use Plan" for development of the outer banks which replaced the "Currituck Plan," developments in compliance with the "Currituck Plan" were still permitted in the county, and (2) plaintiff's evidence tended to show that county approval of participation in a central water and sewer system would not be automatic but failed to show that plaintiff ever presented a definite proposal to the county commissioners or that approval of such a plan would never be forthcoming.

5. **Specific Performance § 1— breach of contract—summary judgment—denial of specific performance before evidence of damages**

The trial court erred in preemptorily denying the equitable relief of specific performance when it granted summary judgment establishing plaintiff's liability for breach of contract and ordered that the issue of damages be decided at a subsequent trial, since the court was without the necessary facts to determine whether damages would provide defendants an adequate remedy at law.

ON plaintiff's and defendants' petition for discretionary review of an opinion of the Court of Appeals reported at 42 N.C. App. 198, 256 S.E. 2d 284 (1979) dismissing plaintiff's and defendants' appeals from judgments of *Snepp, J.*, entered at the May 29, 1978 Session of Superior Court, CURRITUCK County.

Petition for discretionary review allowed 25 September 1979.

Plaintiff and defendants are landowners and competing developers of adjoining tracts of land on the outer banks of Currituck County, N.C. The plaintiff's Whalehead property lies immediately to the north of the defendants' Ocean Sands subdivision. Plaintiff's property is bordered on the north by federal lands, on the east by the Atlantic Ocean and on the west by Currituck Sound. Access to plaintiff's property from the north has been blocked by the federal government. To obtain a southern entrance to their development, plaintiff obtained use of a right-of-way known as the "Slick Easement" which extends southwardly along the Currituck outer banks from the southern boundary of defendants' Ocean Sands subdivision to the northern end of State Road 1200. The "Slick Easement" is an unpaved roadway which has not been dedicated to the public.

This suit arises out of contractual agreements between plaintiff and defendants in which plaintiff acquired use of the "Slick Easement." Prior to the execution of the agreements in question, the defendants had obtained access over the "Slick Easement" by entering its various agreements with Earl F. Slick and others. These agreements granted defendant Coastland a non-exclusive right to use the "Slick Easement" with the proviso that others would be granted the right to use the roadway only with the joint consent of Coastland and Slick. Subsequently, defendant Coastland granted use of the easement to the Ocean Sands Property Owners Association, and plaintiff also sought access across the "Slick Easement" in order that its employees, agents and eventually property owners could reach its Whalehead property.

To obtain this needed access plaintiff entered into various contractual agreements with defendants securing to the plaintiff the right to use the "Slick Easement" to reach its development. On 10 April 1974, in partial consideration for such access, plaintiff agreed to the following:

"3(a) Redesign the remaining unsold portions which are reasonably feasible for redesign of the Whalehead property to comply with the Currituck Plan . . . .[1]

---

1. The Currituck Plan adopted December 3, 1973 was a written and graphic policy statement about the future development of the outer banks. The plan required present and future developments to provide central water and sewer service. It further recommended cluster type or planned unit developments (PUDs) for new subdivisions.

3(b) Work out a participation agreement with Currituck County so that the Whalehead development will participate in the central water and sewer project being sponsored by Currituck County.

3(c) . . . Coastland agrees not to oppose any design of K & R [plaintiff] on any of the Whalehead property provided the standards set out in paragraph 3(a) above are met."

Plaintiff also agreed to other conditions, including payment of a percentage of the cost to construct and maintain the roadway on the "Slick Easement."

In 1974 and 1975 when plaintiff and defendants entered into agreements concerning the "Slick Easement," the "Currituck Plan" was the only development scheme approved for construction on the Currituck Banks. However, in 1977 Currituck County adopted a plan known as the "Land Use Plan" which superseded the "Currituck Plan" as the county's development *policy* for its outer banks. This "Land Use Plan" contrary to the "Currituck Plan" permitted construction of low density housing without requiring that water and sewer service and other public utilities be provided. After adoption of the "Land Use Plan," the "Currituck Plan" was no longer required as a development scheme; however, use of development schemes approved by the "Currituck Plan" was still allowed.

In compliance with the new "Land Use Plan," plaintiff submitted plats of the undeveloped real estate which remained on the Whalehead property. The plats did not comply with the "Currituck Plan." Subsequent to the recording of these new plats, defendants terminated or threatened to terminate plaintiff's right to use the "Slick Easement" for its alleged failure to comply with the contractual agreements which mandated compliance with the "Currituck Plan."

Thereupon plaintiff instituted this action against defendants alleging three causes of action. The first cause of action was settled between the parties by consent. In its second cause of action, plaintiff alleged compliance with the contractual agreements and sought a temporary restraining order, a preliminary injunction, and a permanent injunction restraining the defendants from terminating or threatening to terminate access by way of the "Slick

Easement." Plaintiff moved for summary judgment on this cause of action, and Judge Snepp, in a judgment dated 15 June 1978, granted the plaintiff's motion for summary judgment. The judgment entitled plaintiff to a permanent injunction so long as a pro rata share of the road's upkeep was paid by them. Neither party excepted to this order. In its third cause of action, plaintiff prayed for declaratory judgment which would hold that its design of the Whalehead property complied with plaintiff's and defendants' contractual agreements. However, defendants' motion for summary judgment on plaintiff's third cause of action was granted by Judge Snepp, who held as a matter of law that the new design failed to comply with the "Currituck Plan" and therefore, the parties' agreement had been breached.

Defendants filed a counterclaim alleging that the proposed redesign was in violation of the "Currituck Plan" and their agreement. Defendants prayed for specific performance of their contract insofar as it related to the "Currituck Plan" or, in the alternative $3,000,000 "or some other large sum as actual damages." Judge Snepp granted the defendants' motion for summary judgment as to its counterclaim but denied specific performance. In accord with the pre-trial order by Judge Fountain, the issue of damages, if any, was not before the court and was to be decided at a separate and subsequent trial.

From the order granting summary judgment in favor of the defendants on plaintiff's third cause of action, plaintiff appealed. Defendants appealed from Judge Snepp's denial of their requested relief of specific performance. The Court of Appeals dismissed both appeals as interlocutory in character and therefore non-appealable. Both parties petitioned to this Court for further review.

*J. Kenyon Wilson, Jr. and M. H. Hood Ellis, and White, Hall, Mullen, Brumsey and Small, by Gerald F. White, for Whalehead Properties, plaintiff.*

*LeRoy, Wells, Shaw, Hornthal, Riley & Shearin, by Dewey W. Wells and Mark M. Maland, and Twiford, Trimpi & Thompson, by Russell E. Twiford and Jack E. Derrick, for Coastland Corporation, et al., defendants.*

BROCK, Justice.

[1]　The Court of Appeals in its dismissal of the parties' appeals relied on our opinion in *Tridyn Industries, Inc. v. American Mutual Insurance Company*, 296 N.C. 486, 251 S.E. 2d 443 (1979). For the reasons which follow we hold *Tridyn* does not require dismissal of either plaintiff's or defendants' appeal.

We turn first to plaintiff's right of appeal. It is settled law in this State that the right of appeal lies from the final judgment of superior court or from an interlocutory order of the superior court which affects some substantial right. *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E. 2d 377, 381 (1950); *Tridyn Industries, Inc. v. American Mutual Insurance Company, supra*. Right of appeal is now statutorily provided by G.S. 1-277 and G.S. 7A-27(b). G.S. 1-277(a) provides:

> "An appeal may be taken from every judicial order or determination of a judge of a superior or district court, . . . which affects a substantial right claimed in any action or proceeding. . . ."

G.S. 7A-27(b) provides:

> "From any final judgment of a superior court, other than one [involving a sentence of death or life imprisonment where appeal is direct to the North Carolina Supreme Court], or one based on a plea of guilty or nolo contendere, including any final judgment entered upon review of a decision of an administrative agency, appeal lies of right to the Court of Appeals."

[2]　In this case plaintiff alleged three causes of action against the defendants. The first cause of action was settled by the consent of the parties. In its second cause of action, plaintiff was granted summary judgment and received a permanent injunction preventing the defendants from closing or threatening to deny plaintiff access to the "Slick Easement." No exception was taken to this judgment by either party. In its third cause of action, plaintiff prayed for a declaratory judgment establishing, when reasonably construed under the agreements entered into between plaintiff and defendants, that plaintiff's redesign of the development plats in the Whalehead property complied with the agreements entered into between plaintiff and defendants. Judge

Snepp held that plaintiff's redesign failed to comply with the "Currituck Plan" and that plaintiff was in breach of its agreement. Therefore, on plaintiff's third cause of action summary judgment was entered in favor of the defendants.

In its third cause of action plaintiff prayed for no further relief beyond the declaratory judgment. Thus by the parties settling the first cause of action by consent and by Judge Snepp granting summary judgment in plaintiff's favor on its second cause of action, and against plaintiff on its third cause of action, plaintiff received a final judgment as to all causes of action which it had brought.

The summary judgment for defendants on plaintiff's third cause of action denies plaintiff a trial on the issue of whether plaintiff's redesign of the development of its Whalehead property complied with the agreements between plaintiff and defendants, and disposes of all of plaintiff's causes of action. Thus the order is a final judgment as to all of plaintiff's causes of action and affects a substantial right of plaintiff. The order is therefore appealable under G.S. 1-277(a) and G.S. 7A-27(b). *See Nasco Equipment Co. v. Mason*, 291 N.C. 145, 229 S.E. 2d 278 (1976).

[3] We now turn to defendants' right of appeal from Judge Snepp's denial of the specific performance prayed for in its counterclaim. Judge Snepp granted summary judgment in favor of the defendants on their counterclaim, establishing as a matter of law plaintiff's breach of the contractual agreements. However, Judge Snepp rejected defendants' claim for specific performance. Judge Snepp made no ruling on defendants' claim for monetary damages, as Judge Fountain's pre-trial order had delayed this decision until a subsequent trial. From Judge Snepp's denial of the specific performance remedy, defendants claim a right to appeal.

In our recent decision of *Tridyn Industries, Inc. v. American Mutual Insurance Company, supra,* we held that in a suit by plaintiff for money damages, defendant was not entitled to appeal from an order granting partial summary judgment in favor of the plaintiff on the issue of defendant's liability prior to the trial court's determination of the damages to be awarded. *Id.* at 494, 251 S.E. 2d at 449. In *Tridyn*, defendant appealed from an order granting plaintiff's motion for summary judgment as to the liability of the defendant for breach of an insurance contract. Plaintiff had at

first sought summary judgment on all issues before the court, including damages, but moved for summary judgment solely on the issue of liability. The trial court entered judgment for the plaintiff on the issue of liability but concluded that there was a genuine issue as to the amount of money damages which plaintiff was entitled to recover. From the adverse summary judgment order defendant appealed. In holding defendant's appeal improper as interlocutory this Court noted:

> "If this partial summary judgment is in error defendant can preserve its right to complain of the error on appeal from the final judgment by a duly entered exception. Even if defendant is correct on its legal position, *the most it will suffer from being denied an immediate appeal is a trial on the issue of damages. Id.* at 491, 251 S.E. 2d at 447. (Emphasis ours.)

Here, unlike *Tridyn* where denial of defendant's interlocutory appeal subjected him only to a trial on damages, which was appealable at the entry of final judgment, denial of these defendants' appeal will eliminate the opportunity to obtain specific performance. As we noted above, our decision in *Tridyn* held that an interlocutory order is appealable if it affects a substantial right, and will work injury to the appealing party if not corrected before an appeal from final judgment.

In determining whether an interlocutory judgment affects a substantial right, "[i]t is usually necessary to resolve the question in each case by considering the particular facts of that case . . . ." *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E. 2d 338, 343 (1978). In the case at bar, the preemptory denial by the trial court of specific performance will preclude the defendants from even seeking such relief at the subsequent trial on the issue of damages. By the time final judgment is rendered on defendants' counterclaim, plaintiff may have been able to develop the redesigned Whalehead property in a manner not in compliance with the "Currituck Plan." After development is complete an order to specifically perform the contract according to its terms would be foreclosed, and defendants would be forced to accept the remedy of money damages, which it argues is not an effective remedy nor the one it seeks.

We are of the opinion that denial of defendants' claim to the equitable relief of specific performance prior to hearing evidence on the question of damages, affected a substantial right of the defendants and therefore was appealable. We now turn to the substantive issues raised by these appeals.

[4] Plaintiff contends that the trial court erred in denying its motion for summary judgment, and granting summary judgment in favor of the defendants on plaintiff's third cause of action. By granting summary judgment in favor of the defendants, Judge Snepp ruled as a matter of law that plaintiff's redesign of the unsold portion of its Whalehead subdivision was in breach of the parties' contractual agreement whereby plaintiff was guaranteed access to the "Slick Easement." The portion of the contract pertinent to plaintiff's alleged breach is as follows:

"3(a) Redesign the remaining unsold portions which are reasonably feasible for *redesign of the Whalehead property to comply with the Currituck Plan*. . . . (Emphasis ours.)

3(b) Work out a participation agreement with Currituck County so that the Whalehead development will participate in the central water and sewer project being sponsored by Currituck County.

3(c) . . . Coastland agrees not to oppose any design of K & R [plaintiff] on any of the Whalehead property provided the standards set out in paragraph 3(a) above are met."

Accompanying its motion for summary judgment of 19 May 1978, plaintiff presented the affidavits of County Commissioners Bowden, Dozier and Ferrell which averred that the "County Commissioners of Currituck County *would not* approve a development plat or plan which would place upon the County of Currituck the burden of operation and maintenance of a central water and sewer system constructed and paid for by the developer; nor would the County of Currituck supervise the construction thereof or set forth the specifications therefore (sic)." Plaintiff also tendered the affidavit of S. G. Folkes, a licensed engineer, who averred that no portion of the Whalehead property was reasonably feasible for redesign into high density clusters without central water and sewer, and that the redesign under existing regulations was as close as reasonably possible to the "Currituck Plan."

On 19 May 1978 defendants also filed their motion for summary judgment which was granted by Judge Snepp. Accompanying their motion, defendants filed the affidavits of James E. Johnson, President of Coastland Corporation, Robert E. Upton, Jr., a real estate broker, John T. Sherrill, Secretary of Coastland Corporation, and Benjamin B. Taylor, President of Envirotek, Inc. (the company which designed the "Currituck Plan"). All of the above noted affidavits averred the plaintiff's redesign of the undeveloped Whalehead property did not provide underground utilities, nor provide open space as required by the "Currituck Plan." The affidavits concluded that the redesign was in violation of the "Currituck Plan," and of the parties' agreements. Defendants also presented the affidavits of three Currituck County Commissioners, the Currituck County Manager, and the Currituck County Community Development Officer, which averred that the "Currituck Plan" was no longer *required* as the development scheme on the outer banks, but that developments in compliance with the specifications of the "Currituck Plan" were still allowed in the County.

As a result of the new "Land Use Plan" adopted by the Currituck County Commissioners, and the County's alleged unwillingness to participate in centralized public utilities, plaintiff argues that its literal compliance with the "Currituck Plan" is impossible. Plaintiff contends that it has done everything reasonably feasible to redesign its Whalehead property to comply with the "Currituck Plan," and is thereby in compliance with paragraph 3(a) of the parties' agreement. As noted above, Judge Snepp disagreed, and concluded that plaintiff was in breach of its agreement, and therefore granted summary judgment on plaintiff's third cause of action in favor of the defendants.

G.S. 1A-1 Rule 56(c) provides that summary judgment is appropriate if ". . . there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Accord Kessing v. Mortgage Co.*, 278 N.C. 523, 534, 180 S.E. 2d 823, 830 (1971). In the case at bar, both plaintiff and defendants moved the court for summary judgment. By their motions both parties are contending that there are no material issues of fact left for the trier of fact's determination. Therefore the question raised by plaintiff on this appeal is not the propriety of summary judgment, but the correctness of the trial court's granting sum-

mary judgment in favor of the defendants. For the reasons that follow, we hold that Judge Snepp's order granting the defendants' motion for summary judgment was proper.

Plaintiff by both its pleadings and affidavits concedes that the redesign of the Whalehead property is not in absolute compliance with the "Currituck Plan." It contends however that its redesign constitutes the most reasonable compliance with the "Currituck Plan" when measured by plaintiff's ability to perform under the current "Land Use Plan." We disagree. The defendants presented affidavits of county officials which averred that developments in compliance with the "Currituck Plan" were still *allowed* under the County's current "Land Use Plan"; however, pursuant to its new policy the County no longer *required* developments to comply with said "Currituck Plan." Plaintiff submitted no affidavits or testimony containing evidence that the new "Land Use Plan" prohibited construction in compliance with the "Currituck Plan." Further plaintiff's affidavits aver that its proposed new development of the Whalehead property does not contain the high density features found in developments constructed pursuant to the "Currituck Plan." Since plaintiff's evidence does not dispute that the adoption by Currituck County of a new land use policy, while encouraging low density housing, does not prohibit high density construction as called for under the "Currituck Plan," and the parties' agreement calls for development pursuant to the "Currituck Plan," we affirm Judge Snepp's judgment that the County's adoption of the new non-exclusive "Land Use Plan" does not excuse plaintiff from compliance with its contractual commitments.

Plaintiff also contends that pursuant to the County's new "Land Use Plan," no County participation would be available for construction of central water and sewer as contemplated by paragraph 3(b) of the parties' agreement. Without such participation, plaintiff argues compliance with paragraph 3(b) of the contract becomes impossible, and plaintiff is therefore excused from literal compliance with the agreement. Again we disagree. Plaintiff in its affidavits presents *no evidence* that Currituck County actually refused to agree to participate in constructing a central water and sewer system for plaintiff's Whalehead property. In support of its argument that compliance with paragraph 3(b) of the contract is impossible, plaintiff presents affidavits of three in-

dividual County Commissioners which aver that the County
"*would not* approve a development plat or plan which would place
upon the County of Currituck the burden of operation and
maintenance of a central water and sewer system . . . [built
either by the developer or the County]." (Emphasis ours.) Such af-
fidavits do not represent the consensus of the present County
Commissioners nor do they represent the opinions of any future
County Commissioners. Also such affidavits refer to hypothetical-
ly proposed participation plans, *not* a definite participation
proposal advanced by the plaintiff. Plaintiff also relies on two
resolutions of the Currituck County Board of Commissioners
which state *inter alia*:

> "It is no longer the county's policy to *require* 'cluster' or
> planned unit development (PUD) design schemes . . . nor are
> water and sewer utilities *required* for new developments.
> . . .
>
> Currituck County [will] not involve itself in affording water
> and sewage utilities on the Outer Banks which *will result in
> extensive costs to the taxpayers of the County with very
> limited benefits thereof. . . .*" (Emphasis ours.)

We are of the opinion that these resolutions in themselves do not
present the County's policy as a blanket denial of all participation
plans for central water and sewer systems. They simply resolve
that such plans are no longer required on outer banks
developments, and that the County will not participate in such
plans where extensive taxpayer cost will result with very limited
taxpayer benefits.

The resolutions and affidavits offered by the plaintiff tend to
show that County approval of the central sewer and water par-
ticipation plans will not be automatic, but they do not show that
plaintiff ever presented a definite proposal to the Commissioners,
or that approval of such a plan would never be forthcoming.
Therefore, we hold that plaintiff's affidavits and exhibits do not
establish impossibility of performance of paragraph 3(b) of the
contract. Simply because the County's actions subsequent to the
parties' agreements may make plaintiff's ability to obtain County
paticipation more difficult, does not excuse plaintiff's perform-
ance. *Goldston Brothers v. Newkirk*, 233 N.C. 428, 431, 64 S.E. 2d
424, 427 (1951). *See also* 17 Am. Jur. 2d Contracts § 402 (1964).

The evidence before the trial court established that plaintiff, without adequate excuse, failed to comply with the terms of the parties' contractual agreement, therefore summary judgment was properly entered for defendants.

[5] We now turn to defendants' appeal from the judgment denying its prayer for specific performance. Defendants' motion for summary judgment on its counterclaim was granted, however Judge Snepp ruled that:

> "The motion by the Defendants that the plaintiff be ordered to specifically perform the agreements concerning the redesign of its Whalehead Development . . . is denied. It is ORDERED that the issue of damages be tried at a later session of the court, pursuant to order of The Honorable George M. Fountain entered May 2, 1978."

We note that pursuant to Judge Fountain's pre-trial order, the issue of damages was separated from the remaining issues of liability, to be adjudicated at a subsequent trial. G.S. 1A-1 Rule 42(b) provides for such separation by the trial court in "furtherance of convenience or to avoid prejudice. . . ." Judge Fountain's pre-trial separation of the damages issue was within his discretion, and entirely proper. *Aetna Insurance Co. v. Carroll's Transfer, Inc.*, 14 N.C. App. 481, 484, 188 S.E. 2d 612, 614 (1972). However since the trial court was unable to consider the adequacy of the damages remedy following this order, we hold that its preemptory denial of the equitable relief of specific performance was error.

In *Trust Co. v. Webb*, 206 N.C. 247, 250, 173 S.E. 598, 600 (1934), this Court stated that "[j]urisdiction to enforce specific performance rests . . . on the ground that damages at law will not afford a complete remedy. (Citations omitted.)" *See* 71 Am. Jur. 2d Specific Performance § 8 (1973). Corbin in his treatise on contracts also notes that it is "the stated rule of law that specific performance of a contract will not be decreed unless the remedy in money damages is an inadequate one." *Corbin on Contracts*, Vol. 5A § 1139 (1964). In the case *sub judice* the trial court heard no evidence as to the adequacy of the defendant's remedy through damages. In *Hutchins v. Honeycutt*, 286 N.C. 314, 319, 210 S.E. 2d 254, 257 (1974), Justice Huskins speaking for the Court noted, "specific performance does not depend upon an un-

bridled discretion that varies with the length of the chancellor's foot, but *is granted or withheld according to the equities that flow from a just consideration of all the facts and circumstances of the particular case.* (Emphasis ours.) *Byrd v. Freeman,* 252 N.C. 724, 114 S.E. 2d 715 (1960), 71 Am. Jur. 2d Specific Performance § 6 (1973)." Here with the issue of damages not even before the court, Judge Snepp could not consider all the facts and circumstances of the case and determine if equitable relief was proper.

The denial of defendants' prayer for specific performance was improper because the trial court was without the necessary facts to determine whether damages would have provided defendants an adequate remedy at law.

At a subsequent hearing, for defendants to be entitled to specific performance, they must show their right in equity and good conscience to the relief demanded. The burden rests with the defendants as the parties seeking specific performance to first allege and prove that they have performed their obligations under the contract. *Darden v. Houtz,* 353 F. 2d 369, 372 (4th Cir. 1965). *Wilson v. Lineberger,* 92 N.C. 547 (1885). Also defendants will be entitled to demand that plaintiff specifically perform its portion of the contract only if they can show the inadequacy of their remedy at law. *Trust Co. v. Webb, supra. Corbin on Contracts,* Vol. 5A § 1142 (1965), notes factors to be considered in determining the adequacy of the legal remedy of money damages. Some of them are: (1) the difficulty and uncertainty in determining the amount of damages to be awarded for the breach, (2) difficulty and uncertainty of collecting such damages after they are awarded, and (3) the insufficiency of money damages to obtain duplicate or substantial equivalence of the promised performance. Because there has been no hearing on the damage issue, we are unable to determine from the present state of the record what relief, if any, the defendants are entitled to receive. Therefore in accordance with the order following herewith, this case must be remanded for determination of the propriety of defendants' claim for specific performance.

The order of the Court of Appeals dismissing the appeal is reversed; the order of Judge Snepp granting summary judgment for the defendants on plaintiff's third cause of action is affirmed; the order of Judge Snepp denying defendants' prayer for specific

performance is vacated; and this cause is remanded to the Court of Appeals for further remand to the Superior Court, Currituck County, for trial upon the question of whether defendants are entitled to a decree of specific performance and the extent thereof, or are entitled to monetary damages and the amount thereof.

The order of the Court of Appeals is reversed and this cause is remanded.

Reversed and remanded.