## AMERICAN SURETY CO. OF NEW YORK v. BAKER et al.

No. 5828.

United States Court of Appeals
Fourth Circuit.

Feb. 11, 1949.

T. A. Uzzell, Jr., and Harry DuMont, both of Asheville, N. C., for appellant.

690

R. R. Williams, of Asheville, N. C. (R. R. Williams, Jr., of Asheville, N. C., on the brief) for appellees.

Before PARKER, Chief Judge, and SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Plaintiff-appellant, American S u r e t y Company of New York, instituted, in the United States District Court for the Western District of North Carolina, a civil action against J. A. Baker, individually, J. A. Baker, doing business as J. A. Baker Packing Company and J. A. Baker Packing Company, Inc., defendants-appellees, for the alleged conversion of a large number of hogs. The case was tried before the District Judge and a jury. At the conclusion of plaintiff's evidence, the District Judge sustained defendants' motion to dismiss "on the ground that upon the facts and the law, the plaintiff has shown no right to relief." Plaintiff has duly appealed to us.

There appears to be little or no dispute as to the basic facts in the case.

The Southern Railway Company maintains at Asheville, North Carolina, a stock yard and facilities for feeding and watering cattle and hogs in its possession as bailee for transportation. J. A. Forrest, an employee of the Railway Company, for many years was in charge of the stock yard. Forrest was required to remove the cattle and hogs from the cars, feed them, count them, re-load and then ship them. When cattle or hogs died in transit, these were taken off the cars and an official record made in Car Book Form No. 788, which gave the car numbers, shortages, overages, consignor, consignee and number of hogs or cattle removed as dead. W. M. Chambers, a colored man, was employed to assist Forrest.

From the 4th day of January, 1943, to the 5th day of July, 1946, Forrest, with Chambers' assistance, stole a large number of hogs from shipments coming through Asheville, reported them as being removed from the cars dead, and then sold these hogs to packing concerns at Asheville, North Carolina. Baker Packing Company, in payment for such purchases, issued 145 checks totaling $36,982.97, which represented the fair market value of these hogs. All of these checks were endorsed and cashed by Forrest. Forrest, on twenty-four hour duty at the stock yards, lived there in a building furnished by the Railway Company. This fact, it seems, was known to the officers and employees of the defendant Packing Company.

After the discovery of the thefts, Forrest was prosecuted in the State Court and is now serving a term in the State Penitentiary, where his deposition in this case was taken.

Thereafter, and on the 25th day of February, 1948, the Southern Railway Company transferred to the plaintiff all of its interest in the property stolen, and assigned to the plaintiff all claims and choses in action growing out of the conversion. On March 15, 1948, demand was made by the plaintiff against the defendant for the return of the property or payment of the reasonable market value in the sum of $36,982.97. Upon refusal of this demand, this suit was instituted for the conversion of the property.

The District Judge filed no opinion and gave no indication of just what specific reasons prompted his dismissal of the plaintiff's action. We must, therefore, discuss the important principles which appear to be involved in this dismissal.

Appellees strongly contend that under the applicable law of North Carolina, a bailee for hire cannot recover the value of goods against a third person who has converted these goods. It seems to be well settled under the general law that the bailee here can sue for the conversion of the bailed goods and recover the full value of the goods. Thus, in Dobie on Bailments and Carriers, pp. 133-134, it is stated (with numerous citations): "This special property of the bailee in the goods he can protect by appropriate action against the bailor or against third persons wrongfully interfering with it. Thus the bailee can bring trespass or trover against such third parties. It is generally held that the bailee can recover full damages for the loss or injury in such case, holding the excess beyond his own interest in trust for the bail-

or; and such a recovery is a bar to any subsequent action by the bailor."

See, also, 6 Am.Jur. 386; 2 Cooley, Torts, 4th ed., c. 15, § 3, p. 493; Harper, Torts, Part II, c. 2, § 29, p. 57; Bowers, The Law of Conversion, c. VII, § 394, p. 289. And cf. 2 Pollock & Maitland, History of the English Law, c. 4, § 7, p. 169; Holmes, Common Law 175; Elliott, Bailments and Carriers § 220; The Winkfield, (1902) P. 42.

Counsel for appellees, while seemingly admitting that under the general law the bailee may recover full value for conversion of the bailed goods, insist that the law of North Carolina is to the contrary. We believe that this contention is without merit.

Thus, in Hopper v. Miller, 76 N.C. 402, 404, the Supreme Court of North Carolina stated: "It is also well settled that the bailee may in an action of trover recover the value of the property, and will hold the money for the bailor, in place of the thing for which the bailment makes him responsible, and that the bailor cannot have an action against one of whom the bailee has recovered judgment, and from whom he has received the value of the thing; for the payment of the price is a judicial sale and vests the title in the defendant."

Again, in Asheville & East Tennessee Railroad Company v. Baird, 164 N.C. 253, 80 S.E. 406, 407, Associate Justice Brown, speaking for the Court, said: "Where, a third party has deprived bailee of the possession of the property, or injured it, the bailee may recover the whole value of the property, unless the bailor interposes by a suit for his own protection, and will hold the excess beyond his special interest in trust for the bailor."

This same question was discussed at length, with elaborate citation of authorities, by District Judge Connor, sitting in the United States District Court for the Eastern District of North Carolina, in United States v. Atlantic Coast Line Railroad Company, D.C., 206 F. 190, affirmed 4 Cir., 215 F. 56, L.R.A.1915A, 374. In this case, North Carolina was the locus delicti and Judge Connor concluded that a bailee could recover full damages for the conversion.

It is true, as appellees assert, that a contrary view is expressed in some of the older North Carolina cases, in which a technical distinction is drawn between the actions of trespass and trover. See Hostler's Adm'r v. Scull, 1 N.C. 183, 1 Am.Dec. 583; Hostler's Adm'r v. Scull, 3 N.C. 139; Laspeyre v. McFarland, 4 N.C. 620, 7 Am.Dec. 705; Barwick v. Barwick, 33 N.C. 80; Boyce v. Williams, 84 N.C. 275, 37 Am.Rep. 618. And see Russell v. Hill, 125 N.C. 470, 34 S.E. 640. In the Barwick, Boyce and Russell cases there was no bailment. We think that any expressions in these cases that would seem to deny the right of the bailee to sue the converter for the full value of the converted chattels have been overruled by the later North Carolina cases.

█ It is next contended that the right of the bailee to sue for the conversion of the hogs is not, under North Carolina law, assignable. It is a matter of common knowledge that the whole development of modern law has been in the direction of the freer assignability of choses in action. And we think the Supreme Court of North Carolina has recognized and followed this trend.

Though that case actually involved the assignment of a chose in action arising out of contract, we think the general law and the law of North Carolina are accurately set forth in the opinion of Associate Justice Hoke, in Atlantic and North Carolina Railroad Company v. Atlantic and North Carolina Company, 147 N.C. 368, 61 S.E. 185, 187, 23 L.R.A.,N.S., 223, 125 Am.St. Rep. 550, 15 Ann.Cas. 363: "The general doctrine as to the assignability of rights is very well stated in Pomeroy's Equity Jurisprudence (vol. 3, § 1275), as follows: 'What Things in Action are or are not Assignable.—It becomes important, then, in fixing the scope of the equity jurisdiction, to determine what things in action may thus be legally assigned. The following criterion is universally adopted: All things in action which survive and pass to the personal representatives of a decedent creditor as assets, or continue as liabilities against the representatives of a decedent debtor, are in general thus assignable. All which do not thus survive, but which die with the person of the credi-

tor or of the debtor, are not assignable. The first of these classes, according to the doctrine prevailing throughout the United States, includes all claims arising from contract express or implied, with certain well-defined exceptions; and those arising from torts to real or personal property, and from frauds, deceits, and other wrongs whereby an estate, real or personal, is injured, diminished, or damaged. * * *'"

The claim before us is clearly a tort to personal property and we, therefore, think it is assignable under the law of North Carolina. See, also, Tome v. Dubois, 6 Wall. 548, 73 U.S. 548, 18 L.Ed. 943; Cook v. Ball, 7 Cir., 144 F.2d. 423, certiorari denied 323 U.S. 761, 65 S.Ct. 93, 89 L.Ed. 609; Robertson v. Stuart, 2 N.C. 159. See, too, 4 Am.Jur. 255.

Counsel for appellees direct our attention to Professor McIntosh's authoritative work, North Carolina Practice and Procedure, pp. 200-201. It is there stated: "A cause of action arising out of tort is a chose in action, but it is generally held not to be assignable, since as a rule it does not survive to the administrator."

But Professor McIntosh goes on to state: "Many torts which formerly did not survive may now survive."

And "Torts which affect property are considered more in the nature of a property right and may be assigned, but usually in connection with a transfer of the property."

We are referred, too, to a North Carolina Statute, G.S. § 1-57, reading: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided; but this section does not authorize the assignment of a thing in action not arising out of contract."

We read the last part of this as meaning merely that the statute does not authorize for the first time the assignment of a "thing in action not arising out of contract" which was not assignable under the existing law. It would, we think, be indeed a strained and archaic interpretation to construe the statute as in itself forbidding the assignment of all choses in action not arising out of contract.

The brief of appellees raises several questions as to limitations on the right of one suing under the equitable doctrine of subrogation. Since, as we have held, the chose in action here was assignable, the plaintiff acquired complete legal title thereto. Hence the plaintiff is here suing as one having full legal title under the assignment. There is, accordingly, no occasion to invoke the doctrine of subrogation.

Since this case must be sent back for a new trial, a few words would seem in order in connection with the contentions of the appellant and appellees as to the Statute of Limitations. In the absence of fraud, and there was no allegation of fraud in the instant case, it seems that the three-year Statute of Limitations would begin to run from the date of the conversion. There is no merit in appellant's contention that the statutory period began to run only from the time of appellant's demand for the return of the hogs, or the payment of their value, and the refusal of this demand by the appellees. If such a contention were valid, it would lead to the absurd result that one, with full knowledge of a complete conversion (as here), could indefinitely prolong the running of the statute by the simple device of postponing his futile demand.

Here, to the knowledge of appellant, the hogs had been killed, and the products of the hogs sold, long before this demand was made. In the instant case, it was not necessary for the appellant to make a futile demand for the hogs in order to establish a conversion. See Porter v. Alexander, 195 N.C. 5, 141 S.E. 343; Parker v. Harden, 121 N.C. 57, 28 S.E. 20; County Board of Education v. State Board of Education, 107 N.C. 366, 12 S.E. 452; Ragsdale v. Williams, 30 N.C. 498, 49 Am.Dec. 406; 53 Am.Jur. 819 et seq., 880-881; cf. Trustees of the University of North Carolina v. State Nat. Bank of Raleigh, 96 N.C. 280, 3 S.E. 359. Nor, to set the statute in motion, was it necessary that the plaintiff have knowledge of the conversion. Johnson Cotton Co. v. Alex Sprunt & Co., 201 N.C. 419, 160 S.E. 457; Blount v. Parker, 78 N.C. 128.

There was some evidence here that, in addition to the hogs stolen by Forrest, he also sold to the appellees some hogs owned by him and raised by him on his own farm. This question, and the extent of the recovery by appellant herein (if any) under the Statute of Limitations, can be appropriately handled in the District Court upon a new trial.

Finally, appellees claim that since they were innocent purchasers of the hogs, no liability attaches to them under a supposed maxim that where one of two innocent persons must suffer, he must suffer whose conduct occasions the loss. Whatever may be said about the validity of any such maxim, it clearly has no application to the facts of the instant case.

The judgment of the District Court is reversed and the case is remanded to that Court for a new trial in accordance with this opinion.

Reversed and remanded.