J & B SLURRY SEAL COMPANY v. MID-SOUTH AVIATION, INC. AND RE-SORT AIR SERVICE, INC.

No. 8620SC1319

(Filed 15 December 1987)

**1. Appeal and Error § 6.2— partial summary judgment—appealable**

The trial court's summary judgment dismissing plaintiff's claims affected a substantial right such that it was immediately appealable where the possibility of an inconsistent verdict in defendants' counterclaim trial could irreparably prejudice any subsequent trial of plaintiff's negligence and contract claims. N.C.G.S. § 7A-27(d)(1), N.C.G.S. 1-277(a).

**2. Rules of Civil Procedure § 17; Insurance § 75.2— subrogation—real party in interest**

In an action arising from the disappearance of an aircraft owned by plaintiff and leased by defendant, plaintiff assigned to its insurer a legal interest in the subject matter of all its claims to the extent the insurer's payment compensated its losses, and plaintiff remained a real party in interest under N.C.G.S. 1A-1, Rule 17(a).

**3. Assignments § 1— partial assignment of claim—permissible**

While suit on an "indivisible" cause of action ordinarily may not be divided without the defendant's consent, legal title to the action may be partially assigned.

**4. Insurance § 75.3— subrogation—summary judgment for defendants—improper**

In an action arising from the disappearance of an aircraft owned by plaintiff and leased by defendant where plaintiff assigned to its insurer a legal interest in the subject matter of all its claims to the extent of the insurer's payment, the insurer was only a partial assignee and plaintiff consequently retained some legal interest in its claims against defendants as long as the losses

1

claimed by plaintiff actually exceeded insurer's payments to any extent. Since the record contained correspondence and affidavits asserting varying figures for the value of the aircraft and there were similar factual issues raised regarding uninsured appreciation, lost profits and expenses, plaintiff's real party in interest status could not be determined and the trial court could not enter summary judgment based on N.C.G.S. § 1A-1, Rule 17(a).

**5. Rules of Civil Procedure § 19— partial subrogation of claim to insurance company—necessary joinder of parties**

In an action arising from the disappearance of an aircraft owned by plaintiff and leased by defendant where plaintiff assigned to its insurer a legal interest in the subject matter of its claims to the extent the insurer's payment compensated its losses, the insurer clearly acquired some enforceable legal interest in the subject matter by virtue of the assignment and was a necessary party under N.C.G.S. § 1A-1, Rule 19.

Judge PHILLIPS concurring in the result.

APPEAL by plaintiff from *Wood, Judge*. Order entered 11 August 1986 in Superior Court, RICHMOND County. Heard in the Court of Appeals 12 May 1987.

*Gunter & Clayton, P.A., by Woodrow W. Gunter II and Tamela G. Clayton, for plaintiff-appellant.*

*Van Camp, Gill, Bryan & Webb, P.A., by James R. Van Camp, and Lord, Bissell & Brook, by E. Glenn Parr, Thomas J. Strueber and Kathryn L. Johnson, for defendant-appellees.*

GREENE, Judge.

Plaintiff sued defendants for actual and consequential damages arising from the disappearance of plaintiff's aircraft while in defendants' possession pursuant to an alleged charter/lease and service agreement. Plaintiff alleged defendants' negligence and breach of contract caused $1,250,000 in damages, which sum represented the aircraft's alleged fair market value of $850,000 as well as business expenses and lost profits arising from the aircraft's loss. Defendants denied these claims and counterclaimed for allegedly unpaid fees for service and maintenance of the aircraft.

After discovery, defendants moved for summary judgment on all plaintiff's claims. Based upon plaintiff's execution of a subrogation receipt after payment of its insurance claim by Insurance Company of the State of Pennsylvania (hereinafter called "In-

surer"), defendants asserted the aircraft's fair market value was only $600,900, the amount of plaintiff's insurance recovery. More important, defendants asserted the subrogation receipt demonstrated plaintiff had assigned all its claims to Insurer. Defendants also alleged Insurer had waived all subrogation rights against defendants pursuant to an Amendatory Endorsement of Insurer's policy with plaintiff. Defendants therefore moved that all claims be dismissed since: (1) plaintiff could not sue as the "real party in interest" under N.C.G.S. Sec. 1-57 (1983) and N.C.G.S. Sec. 1A-1, Rule 17(a) (1986); and (2) Insurer could not sue in its own name since it had waived its subrogation rights to sue defendants.

The "Proof of Loss/Subrogation Receipt" provided:

> Received from [Insurer] the sum of $600,900 . . . being full settlement of all claims and demands for loss and damage occurring on [the date the aircraft disappeared] to the [aircraft] . . . and in consideration of such payment [plaintiff] hereby assigns and transfers to [Insurer] each and all claims and demands against any other person, or corporation, arising from or connected with such loss and damage (and [Insurer] is hereby subrogated in the place of and to the claims and demands of [plaintiff] against said person or corporation in the premises), to the extent of the amount above named, and [Insurer] is hereby authorized and empowered to sue, compromise or settle in [its] name or otherwise to the extent of the money paid as aforesaid above.

The Amendatory Endorsement provided that Insurer waived "its right of *subrogation* against [defendants] *as respects loss or damage under Physical Damage Coverage* as set forth under this policy; provided, however, that this waiver shall not prejudice the [Insurer's] right of recourse for damages arising from the manufacturer, repair, sale or servicing of the aircraft by [defendants]." (Emphasis added.)

Plaintiff contended that the subrogation receipt was a partial assignment which only assigned those claims arising from losses insured under plaintiff's insurance policy. Since plaintiff claimed losses exceeding the policy's coverage of mere physical damage, plaintiff contended it did not assign to Insurer its claims for business expenses and lost profits. Plaintiff also moved for a continuance in order to join Insurer if the trial court found it was not

the "real party in interest" under Rule 17(a). Without ruling on plaintiff's motion for continuance, the court granted summary judgment for defendants and dismissed plaintiff's action. Plaintiff appeals.

These facts specifically present the following issues: (I) Since the court's summary judgment did not determine defendants' counterclaim, whether the partial summary judgment affects plaintiff's "substantial right" under N.C.G.S. Sec. 1-277(a) (1983) and N.C.G.S. Sec. 7A-27(d)(1) (1986); and (II) where plaintiff assigned its claims to Insurer "to the extent of" its insurance reimbursement, (A) whether plaintiff's assignment was a partial assignment of plaintiff's interest in all its claims; if so, (B) whether the common law rule against "claim-splitting" would invalidate such a partial assignment; and (C) whether factual disputes over the extent of plaintiff's entire loss precluded the trial court's summary determination that plaintiff's assignment divested it of "real party in interest" status under N.C.G.S. Sec. 1A-1, Rule 17(a) (1983) and N.C.G.S. Sec. 1-57 (1983).

I

[1] In general, only final orders and judgments may be appealed. Our Supreme Court distinguished final and interlocutory judgments in *Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E. 2d 377, 381 (1950):

> A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court . . . . An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.

As the trial court's summary judgment did not adjudicate defendants' counterclaims, we note the court failed to determine there was no just reason for delay of the appeal under N.C.G.S. Sec. 1A-1, Rule 54(b) (1983). The court's *partial summary judgment is* therefore interlocutory, *see* N.C.G.S. Sec. 1A-1, Rule 56(c) (1983), and not otherwise appealable "except as expressly provided by these rules or other statutes." Rule 54(b). Section 7A-27(d) authorizes an appeal of right

from any interlocutory order or judgment of a superior court or district court in a civil action or proceeding which (1) Affects a substantial right, or (2) In effect determines the action and prevents a judgment from which appeal might be taken, or (3) Discontinues the action, or (4) Grants or refuses a new trial.

*Compare* Sec. 7A-27(d) *with* Sec. 1-277(a) (allowing appeal of *any* order or determination meeting identical four criteria of Section 7A-27(d) ); *see Survey of Developments in North Carolina Law, 1978—Civil Procedure*, 57 N.C.L. Rev. 827, 907 n. 101 (1979) (noting both statutes allow interlocutory appeals on grounds other than "substantial right" exception); *but see Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E. 2d 338, 343 (1978) (stating *both* Section 1-277 and Section 7A-27 "in effect provide that no appeal" of "interlocutory" orders allowed unless substantial right affected).

With respect to those interlocutory orders which allegedly do affect a substantial right, our Supreme Court has additionally long required that the interlocutory "ruling or order deprive . . . the appellant of a substantial right *which he would lose if the ruling or order is not reviewed before final judgment." Waters*, 294 N.C. at 207, 240 S.E. 2d at 343 (emphasis added) (quoting *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 437, 206 S.E. 2d 178, 181 (1974) ); *Faircloth v. Beard*, 320 N.C. 505, 358 S.E. 2d 512, 513 (1987) (no appeal unless deprives party of substantial right which would be lost absent immediate review); *Veazey*, 231 N.C. at 362, 57 S.E. 2d at 381 (no interlocutory appeal unless order affects substantial right *and* will work injury if not corrected before final judgment); *accord Welch v. Kinsland*, 93 N.C. 281, 282 (1885).

There has thus evolved a two-part test of the appealability of interlocutory orders under the "substantial right" exception provided in Section 1-277(a) and Section 7A-27(d)(1). First, the right itself must be "substantial." *E.g., Green v. Duke Power Co.*, 305 N.C. 603, 606, 290 S.E. 2d 593, 595 (1982) (court accepts as general proposition that right to avoid one trial is not substantial right but specifically states avoiding possibility of two trials on same "issues" can be substantial right); *but cf. Oestreicher v. American National Stores, Inc.*, 290 N.C. 118, 130, 225 S.E. 2d 797, 805 (1976)

(irrespective of issues, plaintiff had substantial right to have all "causes" tried at same time by same judge and jury). Second, the enforcement of the substantial right must be lost, prejudiced or be less than adequately protected by exception to entry of the interlocutory order. *See Waters*, 294 N.C. at 207, 240 S.E. 2d at 343 (substantial right must be "lost"); *Green*, 305 N.C. at 607-08, 290 S.E. 2d at 596 (right must be prejudiced or not fully and adequately preserved by exception to order's entry); *Love v. Moore*, 305 N.C. 575, 579, 291 S.E. 2d 141, 145 (1982) (objection would preserve right to review and delay would not injure plaintiff).

Justice Exum stated in *Waters* that, "Admittedly, the 'substantial right' test . . . is more easily stated than applied." 294 N.C. at 208, 240 S.E. 2d at 343. Our review of the case law suggests the substantial right test is in some respects as difficult to state as it is to apply. For example, some decisions have apparently blurred or otherwise failed to distinguish the two requirements of appealability under the substantial right exception. *E.g., New Bern Assoc. v. The Celotex Corp.*, 87 N.C. App. 65, 359 S.E. 2d 481, 483 (1987) (defining "substantial right" as "one which will be lost").

More important, some decisions have completely omitted the requirement that the right be lost or prejudiced if not immediately appealed. This omission has produced two occasionally incompatible lines of authority governing the appealability of partial summary judgments. *Compare Green*, 305 N.C. at 608, 290 S.E. 2d at 596 (possibility of second trial affects substantial right if presence of same "issue" in second trial creates possibility party will be prejudiced by different juries rendering inconsistent verdicts on same issue) *and Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E. 2d 405, 408-09 (1982) (where summary judgment allowed for fewer than all defendants, order was appealable since possibility of inconsistent verdict in other trials on same issue affected substantial right) *with Oestreicher*, 290 N.C. at 130, 225 S.E. 2d at 805 (where plaintiff's claim for punitive damages dismissed, order held appealable since order "affected" alleged substantial right to try all "causes" in one proceeding: no discussion whether right would be lost or issue prejudiced without immediate appeal).

While the *Oestreicher* Court clearly omitted the requirement that the substantial right be lost or prejudiced, it is true that the

alleged substantial right to have all claims or causes determined in one proceeding could not be protected by simply granting plaintiff a separate trial after appeal. *Cf.* Survey, 57 N.C.L. Rev. at 908 (noting question whether substantial right was adequately protected would not be separate "test" under *Oestreicher*). However, we note the *Green* Court later rejected an appealability argument based solely on the *Oestreicher* right to determine all claims in the same proceeding. *Green*, 305 N.C. at 606, 290 S.E. 2d at 595 (rejecting argument solely based on *Oestreicher* that party had substantial right to have contribution claim determined in same proceeding where primary liability determined).

Thus, after *Green*, simply having all claims determined in one proceeding is not a substantial right. A party has instead the substantial right to avoid two separate trials of the same "issues": conversely, avoiding separate trials of different issues is not a substantial right. *See Porter v. Matthews Enterprises, Inc.*, 63 N.C. App. 140, 143, 303 S.E. 2d 828, 830, *disc. rev. denied*, 309 N.C. 462, 307 S.E. 2d 365 (1983) (stating *Green* held avoiding separate trials on separate issues is not substantial right); *see also Survey of Developments in North Carolina Law — Civil Procedure*, 61 N.C.L. Rev. 957, 1008 (1982) (stating *Green* subordinates judicial efficiency to jury's need for simple issues by allowing severance of different claims arising from same facts).

However, before and even after *Green*, some decisions other than *Oestreicher* either followed its example of a substantial right or otherwise omitted the requirement that the substantial right be lost or irreparably prejudiced. *E.g., Nasco Equip. Co. v. Mason*, 291 N.C. 145, 148, 229 S.E. 2d 278, 281 (1976) (citing *Oestreicher*, court held partial summary judgment denying plaintiff trial of its claims in one proceeding affected a substantial right and was appealable without discussing whether plaintiff would be prejudiced by delaying appeal until after trial of counterclaims); *accord Narron v. Hardee's Food Systems, Inc.*, 75 N.C. App. 579, 581, 331 S.E. 2d 205, 206, *disc. rev. denied*, 314 N.C. 542, 335 S.E. 2d 316 (1985); *compare Bernick*, 306 N.C. at 439, 293 S.E. 2d at 408-09 (right to have "issue" of liability to all plaintiffs tried by same jury) *with Webb v. Triad Appraisal and Adjustment Service, Inc.*, 84 N.C. App. 446, 448, 352 S.E. 2d 859, 861 (1987) (citing *Oestreicher*, holding substantial right to have all "claims" determined in one proceeding); *accord Shelton v. Fairley*, 86 N.C. App. 147,

149, 356 S.E. 2d 917, 918 (1987); *see also Whalehead Properties v. Coastland Corp.*, 299 N.C. 270, 276, 261 S.E. 2d 899, 903 (1980) (citing *Nasco*, court allowed appeal of order denying trial of "issue"; court also allowed appeal of injunctive order since substantial right would be "precluded" if no immediate appeal).

We note the *Nasco* Court also apparently merged two separate grounds for appealing interlocutory orders: the Court characterized a summary judgment as an order which denied plaintiff a jury trial and *"in effect, determine[d] the claim* [and] *thus* affect[ed] a substantial right . . . under General Statutes 1-277 and 7A-27." *Nasco*, 291 N.C. at 148, 229 S.E. 2d at 281 (emphasis added); *cf.* Sec. 7A-27(d)(1), (2) (allowing appeal of interlocutory order which affects substantial right *or* which in effect determines the action and prevents an appeal); *see also Survey of Developments in North Carolina Law, 1979—Civil Procedure*, 58 N.C.L. Rev. 1181, 1265 n. 32 (1980) (provisions of Section 1-277(a) and Section 7A-27(d) both provide independent grounds for appeal and should be analyzed accordingly); *but see Unigard Carolina Insurance Co. v. Dickens*, 41 N.C. App. 184, 254 S.E. 2d 197 (1979) (holding order granting partial new trial was not appealable under Section 1-277(a) since did not deprive defendant of substantial right; statute separately authorizes appeal of an order which "grants or refuses" new trial).

This apparent doctrinal inconsistency concerning the requirements for appealing interlocutory orders may produce irreconcilable results in cases which, like the instant case, include counterclaims. Specifically, where summary judgment is entered against plaintiff in a case where defendant's counterclaims turns on jury issues different from those raised by plaintiff's claim, the *Oestreicher/Nasco* and *Green/Bernick* lines of authority produce opposite results. Under the *Oestreicher/Nasco* line, a partial summary judgment in such a case is appealable since simply denying plaintiff a trial of its claim "affects" the substantial right to have all claims tried in one action. However, irrespective of any effect on this purported substantial right, such a partial summary judgment is not appealable under *Green* and *Bernick* since there is ordinarily no possibility of inconsistent verdicts or other lasting prejudice where trial of defendant's counterclaim before appeal will not determine any issues controlling the potential trial of plaintiff's claims after appeal.

However, the issue of defendants' care of plaintiff's aircraft in the instant case is fundamental to the disposition of both plaintiff's negligence and contract claims and defendants' counterclaim for payment under the alleged charter/lease and service agreement. Therefore, the rationale of either line of authority would allow immediate appeal of the partial summary judgment in this case. Plaintiff's right to have its primary claims and defendants' counterclaim determined in one proceeding is a substantial right under *Oestreicher* and *Nasco* which allows immediate appeal of the court's partial summary judgment under Sections 1-277(a) and 7A-27(d): the presence of identical factual issues in both proceedings may produce inconsistent verdicts and thus an immediate appeal is similarly allowed under *Green* and *Bernick*.

While we value the case-by-case flexibility afforded us by the substantial right test, appellate application of this statutory test need not be so uncertain or inconsistent that premature or fragmentary appeals are needlessly encouraged. *Cf.* Comment, *Interlocutory Appeals in North Carolina: The Substantial Right Doctrine*, 18 Wake Forest L. Rev. 857, 876-78 (1982) (reviewing drawbacks of doctrine). As we question the compatibility of the *Oestreicher/Nasco* analysis with *Veazey, Green* and *Bernick*, we adopt the latter decisions' longer established, and more recently affirmed, rationale and conclude that the possibility of an inconsistent verdict in defendants' counterclaim trial could irreparably prejudice any subsequent trial of plaintiff's negligence and contract claims. We therefore hold that the trial court's summary judgment dismissing plaintiff's claims affected a substantial right such that it is immediately appealable under Section 7A-27(d)(1) and Section 1-277(a).

## II

[2] After plaintiff's airplane disappeared, plaintiff executed the disputed form "Subrogation Receipt" in favor of Insurer. Defendants contend the subrogation receipt evidences an absolute assignment to Insurer of all plaintiff's claims such that Insurer is the only real party in interest to this action under Rule 17(a) and Section 1-57. Plaintiff contends the document is ambiguous but, at most, simply reflects a partial assignment to Insurer of the property loss claim compensated by Insurer's $600,900 payment. Plaintiff asserts it retained a legal interest in its negligence and

contract claims for the appreciated value of the aircraft and for expenses and lost profits resulting from its loss. Plaintiff contends it therefore remained a real party in interest under Rule 17(a).

Plaintiff's negligence and contract claims all arise from the disappearance or theft of plaintiff's aircraft. Neither party disputes that tort and contract claims arising from property damage or loss may be assigned *in toto. See Rolling Fashion Mart, Inc. v. Mainor*, 80 N.C. App. 213, 341 S.E. 2d 61 (1986) (holding subrogation receipt assigned plaintiff's entire property damage claim to insurer); *American Surety Co. of New York v. Baker*, 172 F. 2d 689, 691-92 (4th Cir. 1949) (under law prior to enactment of Section 1-57, property tort claims were assignable: Section 1-57 does not forbid assignment of rights other than contract but only does not authorize such assignments where not assignable under other law); *see also* 6A J. Appleman, *Insurance Law and Practice*, Sec. 4053 at 137 (1972) (claim for wrongful destruction of personalty by fire is assignable); *compare Southern Ry. Co. v. O'Boyle Tank Lines, Inc.*, 70 N.C. App. 1, 9, 318 S.E. 2d 872, 878 (1984) (purported assignment of *personal injury* claim deemed ineffective under common law as against public policy and not allowed under Section 1-57) *with American Surety Co.*, 172 F. 2d at 691-92 *and* 6 Am. Jur. 2d *Assignments* Sec. 39 (1963) (discussing general rule that personal injury claims are assignable if statutes provide for survival of such claims after death).

Insurance policies must be given a reasonable interpretation consonant with their apparent object and plain intent; accordingly, sentence structure and punctuation may be carefully analyzed to confirm the meaning of the document's language. *See Huffman v. Occidental Life Ins. Co. of Raleigh*, 264 N.C. 335, 338, 141 S.E. 2d 496, 498 (1965). The disputed subrogation receipt acknowledges plaintiff's receipt of $600,900 (the maximum insurance recovery minus a $100 deductible payment) as "full settlement" of "all claims . . . for loss and damage occurring [to the aircraft] on the 18th day of August 1979." The receipt then recites that in "consideration of such [settlement] payment[,] all claims arising . . . against any person . . . from . . . such loss" are "subrogated" *and* "assign[ed] . . . *to the extent of the amount above named* [*i.e.*, $600,900]" (emphasis added). The Insurer is accordingly "author-

ized to sue, compromise or settle in [its own] name or otherwise *to the extent of the money paid . . .*" (emphasis added).

## A

At the outset, we reject plaintiff's contention that it assigned to Insurer only its interests in the physical damage claim covered by its insurance policy. The subrogation receipt specifically assigns "all claims arising from" the aircraft's loss "to the extent of" $600,900. The partial nature of this assignment, if any, must result from this "extent" to which *all* plaintiff's claims were assigned to Insurer.

The language of the subrogation receipt specifically "assigns" plaintiff's claims to the same "extent" the Insurer is "subrogated" to those claims, *i.e.*, to the extent of Insurer's $600,900 payment. The law of subrogation therefore sheds considerable light on the extent to which the claims have been assigned. Subrogation is an equitable remedy in which one steps into the place of another and takes over the right to claim monetary damages to the extent that the other could have, while an assignment is the formal transfer of property or property rights. *Payne v. Buffalo Reinsurance Co.*, 69 N.C. App. 551, 554, 317 S.E. 2d 408, 410 (1984). In effect, the insurer's subrogation is itself an assignment implied by equity to reimburse the insurer "to the extent" the insurer's payments have discharged the tort-feasor's primary liability to the insured. *See Shambley v. Jobe-Blackley Plumbing and Heating Co.*, 264 N.C. 456, 458, 142 S.E. 2d 18, 20 (1965).

Where the insurer's payments compensate the insured's entire loss (including all losses not covered by or compensated under the insurance policy), our courts have long held the insurer is subrogated to the insured's entire cause of action. *E.g.*, *Hardware Dealers Mutual Fire Ins. Co. v. Sheek*, 272 N.C. 484, 486, 158 S.E. 2d 635, 637 (1968); *Powell & Powell, Inc. v. Wake Water Co.*, 171 N.C. 290, 296, 88 S.E. 426, 430 (1916). Conversely, where the insurer's payments have only partially compensated the insured's entire loss, the insurer is only partially subrogated to the insured's claims. *Id.* Since in both instances the insurer is subrogated only "to the extent" of its actual payments, whether an insurer is partially or fully subrogated turns on the factual determination whether the insurer's payments have fully compensated the insured's entire loss. *See Jewell v. Price*, 259 N.C. 345,

349, 130 S.E. 2d 668, 672 (1963) (allegation that insurer paid plaintiff's full losses is allegation of fact for determination by jury).

While the doctrine of subrogation vests an equitable right to reimbursement in the insurer, the insured's assignment of legal title to its claims instead transfers a separable legal interest in the claim's subject matter. *See Payne*, 69 N.C. App. at 554, 317 S.E. 2d at 410 (property rights transferred by assignment are distinguishable from insurer's subrogation rights); *American Surety Co.*, 172 F. 2d at 692 (where claim assignable, assignment of *entire* claim conveyed full legal title such that doctrine of subrogation irrelevant to insurer's suit as assignee).

In the instant case, Insurer could have acquired by assignment a legal interest in the subject matter of plaintiff's claims to an extent *greater* than its $600,900 equitable subrogation interest in plaintiff's recovery; indeed, Insurer could have acquired absolute title to plaintiff's entire $1,250,000 claim irrespective of the extent to which Insurer was subrogated to plaintiff's claims. *See generally* 16 G. Couch, *Couch on Insurance 2d* par. 61:109-113 (1983). However, this subrogation receipt specifically manifests Insurer's contrary choice to acquire a legal interest in plaintiff's claims only "to the extent" it was entitled to subrogation to those claims, *i.e.*, only to the extent its $600,900 insurance payment compensated plaintiff's entire loss.

Thus, we conclude plaintiff assigned to Insurer a legal interest in the subject matter of all plaintiff's claims to the extent the Insurer's $600,900 payment compensated plaintiff's losses arising from the disappearance of its aircraft. If plaintiff's losses exceeded $600,900, then only a partial assignment had occurred. *Cf. Squires v. Sorahan*, 252 N.C. 589, 590, 114 S.E. 2d 277, 278-79 (1960) (where insurance company paid five-sixths of plaintiff's tort judgment, court treated as partial an assignment to insured "to extent of" insurer's payments); *see, e.g., Warren v. Kirwan*, 598 S.W. 2d 598, 600 (Mo. Ct. App. 1980) (characterizing as "partial" assignment an identical proof of loss whereby insured assigned all claims to the extent of the insurer's payments); *see generally* Annot., 13 A.L.R. 3d Sec. 15[b] (1967 and 1987 Supp.) (discussing decisions where assignment or subrogation is for part of insured's entire claim); *cf.* Restatement (Second) of Contracts Sec. 326(1) (1981) (assignment of part of right is operative as to that part "to

the same extent" and in same manner as if part had been separate right).

B

[3] We reject defendants' contention that allowing a partial assignment of the instant plaintiff's claims would contravene the *Rolling Fashion Mart* holding. In that case, the plaintiff-insured's own pleadings revealed the insurer's payments actually exceeded the plaintiff's allowable losses. 80 N.C. App. at 218, 341 S.E. 2d at 64 (plaintiff received $2,600 from insurer for damage to its vehicle but only claimed $2,000 damage to vehicle). Therefore, the court held an assignment "to the extent of" the insurer's payments divested plaintiff of any interest in its allowable property damage claim. In the instant case, the record does not reveal any similarly definitive evidence that Insurer's payments exceeded plaintiff's entire loss. As the insurer's payments in *Rolling Fashion Mart* exceeded the insured's losses by even more than the $100 deductible retained, the court also held that the plaintiff was divested of any legal interest in recovering its deductible payment. *Id.* As to the $100 retained by Insurer, we similarly note the instant plaintiff retains a legal interest in recovering from defendants any portion of that $100 deductible only if plaintiff's entire loss actually exceeds $600,900. *Cf.* Note, *Real Party in Interest—Insurance—Partially Subrogated Insurer's Standing to Sue*, 38 N.C.L. Rev. 99, 100 n. 9 (1959) (assigning entire cause of action divests plaintiff of any right to deductible amount retained by insurer); 16 G. Couch, *Couch on Insurance 2d* par. 61:111-13 (1983) (assignment of insured's entire claim to insurer precludes any objection that insured remains real party in interest).

However, in holding the plaintiff could not recover its deductible payment, the *Rolling Fashion Mart* court also stated:

Plaintiff argues . . . that it is entitled to recover at least its $100 deductible. We disagree. The property damage claim is a single indivisible claim, *and cannot be partially assigned.* Plaintiff assigned its entire claim for damage to its vehicle; that claim has been resolved by arbitration and award. *To hold otherwise would subject defendant to multiple actions for the same wrong and would sanction the splitting of an indivisible claim for relief.*

80 N.C. App. at 218-19, 341 S.E. 2d at 65 (emphasis added). Our Supreme Court has indeed stated that "[w]here insured property is destroyed or damaged by the tortious act of another, the owner of the property has a single and indivisible cause of action against the tortfeasor for the total amount of the loss." *Burgess v. Trevathan*, 236 N.C. 157, 160, 72 S.E. 2d 231, 233 (1952) (insurer's partial *subrogation* did not divest insured of title to action). In subrogation cases such as *Burgess*, title to the action remains in the insured by virtue of previously discussed subrogation principles, not by virtue of an alleged prohibition against partial assignments. *Cf. Security Fire & Indem. Co. v. Barnhardt*, 267 N.C. 302, 303, 148 S.E. 2d 117, 118 (1966) (following *Burgess* in dismissing claims brought by partially subrogated insurers but noting no allegation claims were assigned to either insurer).

In assignment cases such as the instant case, title to the action is similarly determined by substantive principles of assignment rather than by the procedural rule against "claim-splitting." Our courts have never held the rule against claim-splitting itself controls the substantive determination of a party's legal interest in a cause of action: the rule merely requires that "all damages incurred by the insured as a result of a single injury must be recovered in a single action." *Smith v. Pate*, 246 N.C. 63, 67, 97 S.E. 2d 457, 460 (1957). After finding a partial assignment of a debt under contract law in *Booker v. Everhart*, 294 N.C. 146, 240 S.E. 2d 360 (1978), the Court noted the *additional* consideration that, "*both* the assignor of a partial interest in the debt and defendant-debtor *have the right to insist that the entire matter be settled at one time—that the cause of action not be split." Id.* at 157, 240 S.E. 2d at 366 (emphasis added).

While the *Rolling Fashion Mart* result is correct, the court's statement that property damage claims may not be partially assigned results from a misapplication of the rule against "claim-splitting." The rule is for the tort-feasor's benefit and simply ensures that he "cannot be compelled *against his will* to defend two actions for the same injury." *Burgess*, 236 N.C. at 160-61, 72 S.E. 2d at 233; *see also Southern Stock Fire Ins. Co. of Greensboro v. Raleigh, Charlotte and Southern Ry. Co.*, 179 N.C. 290, 292-93, 102 S.E. 504, 505 (1920) (right of action can be divided by agreement or act and rule waived since purpose of rule is to protect defendant from multiple lawsuits and expenses).

.

Thus, while suit on the "indivisible" cause of action ordinarily may not be divided without the defendant's consent, legal *title* to the action may be partially assigned. Indeed, even under subrogation law, the "claim-splitting" rule does not in every case necessarily bar a *second* suit by a partially subrogated insurer on the same facts giving rise to a prior suit by its insured. *See, e.g., Nationwide Mutual Ins. Co. v. Spivey,* 259 N.C. 732, 131 S.E. 2d 338 (1963) (insured's consent judgment for recovery of losses not compensated by insurer would not bar insurer's subsequent suit against tort-feasor to recover compensation paid).

In the instant case, the "claim-splitting" rule merely gives defendants the choice to settle the entire controversy in one action by joining Insurer. *See Booker,* 294 N.C. at 157, 240 S.E. 2d at 366; *see also* Williston, *Williston on Contracts 3d* Sec. 443 at 311 n. 14 (1960) (approving decision holding assignor may sue for part of claim not assigned but defendant can then assert "claim-splitting" rule to join the partial assignee). Properly applied, the procedural prohibition against "claim-splitting" is therefore irrelevant to our determination under substantive law whether plaintiff's subrogation receipt constituted a valid partial assignment under which plaintiff retained its status as a real party in interest. *See* 3A *Moore's Fed. Practice* par. 17.09[1.-1] at 63 (real party in interest provisions only concern proper party to sue under a valid assignment and leave assignability questions to substantive law); *see also Lumley v. Dancy Const. Co. Inc.,* 79 N.C. App. 114, 121-22, 339 S.E. 2d 9, 14 (1986).

C

If plaintiff has retained any separable legal interest in the subject matter of its claims, then *both* plaintiff and Insurer are real parties in interest under Rule 17(a). *See Booker,* 294 N.C. at 155, 240 S.E. 2d at 365 (1978) (partial assignees and assignor were all deemed real parties in interest based on their respective rights in total debt); *see also Reliance Ins. Co. v. Walker,* 33 N.C. App. 15, 18-19, 234 S.E. 2d 206, 209, *cert. denied,* 293 N.C. 159, 236 S.E. 2d 704 (1977) (real party in interest must have some interest in subject matter of litigation and have legal right by substantive law to enforce claim). Rule 17(a) then provides defendants the right to a continuance should they desire joinder of Insurer as an additional real party in interest.

**[4]**   While we hold our law allows a partial assignment of interest in claims arising from property loss or damage, we must still determine whether such a partial assignment has occurred under the facts of this case such that plaintiff remains a real party in interest. As long as the losses claimed by plaintiff actually exceed Insurer's payments to any extent, Insurer is only a partial assignee and plaintiff consequently retains some legal interest in its claims against defendants. Plaintiff has claimed losses which greatly exceed Insurer's $600,900 payment. The record contains correspondence and affidavits which assert varying figures for the "cash," "wholesale" and "actual" value of plaintiff's aircraft. Defendants assert the aircraft's "fair market value" equals the insurance payment of $600,900. None of these figures conclusively proves the aircraft's fair market value which is ordinarily the proper measure of stolen or destroyed property's value. *See Southern Watch Supply Co., Inc. v. Regal Chrysler-Plymouth, Inc.*, 82 N.C. App. 21, 345 S.E. 2d 453 (1986). Plaintiff's claims for uninsured appreciation, lost profits and expenses raise similar factual issues.

As to plaintiff's real party in interest status in this action, we must therefore conclude the trial court could not enter summary judgment against plaintiff based on Rule 17(a) since plaintiff's status as a partial assignor and real party in interest cannot be determined until the factual issue of the extent of plaintiff's entire loss is determined. *Cf. Jewell*, 259 N.C. at 349, 130 S.E. 2d at 672 (conflicting allegations of insured's loss raised factual issue whether insured was real party in interest). Of course, where there is no genuine dispute that the insurer's payments exceed the insured's full loss, the trial court may summarily determine an objection to the insured's real-party-in-interest status. *See University Motors, Inc. v. Durham Coca-Cola Bottling Co.*, 266 N.C. 251, 256, 146 S.E. 2d 102, 107 (1965). However, as the instant parties genuinely dispute the full extent of plaintiff's losses, we must reverse the trial court's summary judgment dismissing plaintiff's action for lack of a real party in interest under Rule 17(a) and Section 1-57.

**[5]**   However, we are required to take notice of another potential basis for dismissal after remand. While the real party in interest provisions of Rule 17 are for the parties' benefit and may be waived if no objection is raised, the necessary joinder rules of

J & B Slurry Seal Co. v. Mid-South Aviation, Inc.

N.C.G.S. Sec. 1A-1, Rule 19 place a mandatory duty on the court to protect its own jurisdiction to enter valid and binding judgments. *See Carolina First National Bank v. Douglas Gallery of Homes, Ltd.*, 68 N.C. App. 246, 251, 314 S.E. 2d 801, 804 (1984) (unlike necessary joinder under Rule 19, absence of real party in interest under Rule 17 did not constitute "fatal defect" where opposing party failed to show prejudice in not having real party joined); 3A *Moore's Fed. Pract.* par. 17.09[1.-1] at 65 (although Rule 17 should not be applied to dismiss suits brought by assignors without joinder of their assignees, failure to join assignee where required under Rule 19 may require dismissal); *Strickland v. Hughes*, 273 N.C. 481, 485, 160 S.E. 2d 313, 316 (1968) (valid judgment cannot be rendered without necessary party). While a party may waive its right to be sued by a real party in interest, Rule 19 requires the court to join as a necessary party any persons "united in interest" and/or any persons without whom a complete determination of the claim cannot be made. *See Ludwig v. Hart*, 40 N.C. App. 188, 190, 252 S.E. 2d 270, 272, *cert. denied*, 297 N.C. 454, 256 S.E. 2d 807 (1979). Since a judgment without such necessary joinder is void, a trial court should, on its own motion, order a continuance to provide a reasonable time for necessary parties to be joined. *Booker*, 294 N.C. at 158, 240 S.E. 2d at 367.

Whether or not Insurer's legal title to plaintiff's claims is partial or complete, Insurer clearly acquired some enforceable legal interest in the subject matter of this action by virtue of the assignment provided by the subrogation receipt. *See American Surety Co.*, 172 F. 2d at 692. Given Insurer's interest in all of plaintiff's claims, a determination of such claims in this action will necessarily prejudice Insurer's interests in them. Insurer is therefore a necessary party under Rule 19. *See Ludwig*, 40 N.C. App. at 190, 252 S.E. 2d at 272 (mandatory joinder of persons whose absence prejudices rights of parties before court or persons not before court); *see also Booker*, 294 N.C. at 157, 240 S.E. 2d at 366 (where suit brought by partial assignees, remaining interests of assignor could not be protected without joinder of assignor). While Insurer's absence does not merit immediate dismissal under *Booker*, the trial court on remand must give plaintiff reasonable time to join Insurer before dismissing plaintiff's claim under Rule 19. *Id.* at 157-58, 240 S.E. 2d at 367.

Finally, we note defendants argue that Insurer has itself waived all its claims against defendants. Such a waiver could of course vitiate Insurer's status as a necessary party. However, since the Amendatory Endorsement in question only evidences a *limited* waiver of Insurer's *subrogation* rights, Insurer's rights as an assignee nevertheless dictate its joinder as a necessary party.

### III

Plaintiff's status as partial assignor and a real party in interest turns on the disputed factual extent of plaintiff's entire loss, which includes those losses neither covered by nor compensated under plaintiff's insurance contract with Insurer. Therefore, we reverse the trial court's summary judgment dismissing plaintiff's claims for lack of a real party in interest and remand the case for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judge COZORT concurs.

Judge PHILLIPS concurs in the result.

Judge PHILLIPS concurring in the result.

Though I agree that the order is both appealable and erroneous, in my judgment most of what is said in the opinion is unnecessary and some of it is incorrect. In my view the issues discussed are free of difficulty, each can be adequately and correctly treated in a paragraph or two, and neither party nor our jurisprudence would have suffered if nothing had been said about appealability since that issue was not raised by either of the briefs and the order was clearly appealable, in any event. Be that as it may, my opinion is that: (1) The order, though interlocutory, was immediately appealable whether the trial judge so declared or not because plaintiff's right to try its claim for defendants' negligence in caring for its airplane before the same jury that tries defendants' counterclaim for expenses incurred in caring for the plane is a substantial one, G.S. 1-277, for it would be a travesty if the claims were tried before different juries and one found that the parties agreed to one thing and the other found that they agreed to something else; and (2) the order was erroneous and no

further findings are necessary because the materials before the court clearly establish that plaintiff assigned to its insurance company only that part of its indivisible claim that the insurance company paid for, and thus plaintiff is still a necessary party to the action and the insurance company can be joined at the motion of either party.