LEROY E. TUCKETT, PLAINTIFF V. JERRY U. GUERRIER D/B/A THE ATEPA GROUP, P.A., AND/OR ANY PERSONS DOING BUSINESS FOR OR AS THE ATEPA GROUP, P.A., DEFENDANTS

No. COA01-348

(Filed 19 March 2002)

**1. Appeal and Error— appealability—partial summary judgment—risk of inconsistent verdicts**

An appeal from a partial summary judgment for defendants on claims concerning ownership of an architectural firm was

interlocutory but involved a substantial right in the risk of inconsistent verdicts where there was a remaining claim for wrongful eviction.

**2. Corporations— stock certificate—transfer—delivery— issue of fact**

In an action involving the transfer of a security certificate in registered form, there was a genuine issue of material fact regarding delivery where defendant pointed to records of the conveyance in the stock ledger and in the registered transaction, while plaintiff produced the certificate, which did not contain his signature, and contended that he had never relinquished possession because negotiations were ongoing.

**3. Corporations— stock certificate—denial of transfer— estoppel not applicable**

The doctrine of estoppel did not operate to bar plaintiff from denying the validity of a stock certificate transfer. Estoppel cannot arise if the transfer is invalid and the transaction void; on the other hand, estoppel would not be reached if the certificate was delivered.

Appeal by plaintiff from preliminary injunction dated 23 November 1999 by Judge Knox V. Jenkins, Jr., from order dated 4 February 2000 by Judge Ronald L. Stephens, from order filed 13 September 2000 by Judge J.B. Allen, Jr., and from order filed 28 November 2000 by Judge Henry W. Hight, Jr. in Durham County Superior Court. Heard in the Court of Appeals 19 February 2002.

*Michaux & Michaux, P.A., by Eric C. Michaux and Saroya L. Powell, for plaintiff-appellant.*

*The Banks Law Firm, P.A., by Sherrod Banks and John Roseboro, for defendant-appellees.*

GREENE, Judge.

Leroy E. Tuckett (Plaintiff) appeals an order dated 23 November 1999 dissolving a temporary restraining order against L.E. Tuckett Architect Group, P.A. (the Firm), Jerry U. Guerrier (Guerrier) d/b/a The Atepa Group, P.A., and or any persons doing business for or as The Atepa Group, P.A. (collectively Defendants) and granting

Defendants a preliminary injunction against Plaintiff,[1] an order dated 4 February 2000 denying Plaintiff's motions to add a necessary party and to amend the preliminary injunction, an order filed 13 September 2000 allowing Defendants' motion to dismiss Plaintiff's fraud claim, and an order filed 28 November 2000 granting Defendants' motion for partial summary judgment and a declaratory judgment that Guerrier "is the sole and exclusive owner of the [Firm]."[2]

On 10 November 1999, Plaintiff filed a complaint requesting a temporary restraining order and a preliminary injunction against Defendants seeking a declaration as to the ownership of the Firm. The trial court issued a temporary restraining order *ex parte*. On 16 November 1999, Plaintiff filed a motion to amend the temporary restraining order and obtained a supplemental order to the temporary restraining order *ex parte*.

Defendants filed an answer and counterclaim dated 19 November 1999. After a hearing was held in respect to Plaintiff's motion for a preliminary injunction, the trial court dissolved the temporary restraining order and issued a preliminary injunction in Defendants' favor. On 20 December 1999, Plaintiff filed a response to Defendants' counterclaim. On 2 February 2000, after being granted leave to amend, Plaintiff filed an amended complaint for a declaratory judgment and injunctive relief and a motion to amend the preliminary judgment. The amended complaint included six new causes of action: wrongful eviction, wrongful conversion, tortious interference with contract and business relations, wrongful interference with future relations and/or prospective advantage, forgery, and fraud. The trial court denied Plaintiff's motion to amend the preliminary injunction on 4 February 2000. Defendants filed an amended answer and counterclaim dated 6 March 2000 to which Plaintiff filed a reply on 6 April 2000. On 13 September 2000, the trial court allowed: (1) Plaintiff's motion filed 31 July 2000 for leave to amend his answer to Defendants' counterclaim and (2) Defendants' motions dated 1 September 2000 to amend its answer to add the defense of equitable

---

1. In his brief to this Court, Plaintiff states the two-prong test under which the trial court was permitted to grant Defendants a preliminary injunction and concedes that "[i]n this matter[,] both of those requirements have been met." Plaintiff's appeal as it relates to the grant of a preliminary injunction to Defendants is thus abandoned.

2. In his brief to this Court, Plaintiff did not discuss the trial court's denial of Plaintiff's motion to add a necessary party or the trial court's dismissal of Plaintiff's fraud claim. Accordingly, these arguments are deemed abandoned. N.C.R. App. P. 28(a).

estoppel and to dismiss Plaintiff's fraud claim. The trial court denied Plaintiff's motion for summary judgment.

In a motion dated 27 October 2000, Defendants sought partial summary judgment as to Plaintiff's claims for wrongful conversion, tortious interference with contract and business relations, tortious interference with future relations and/or prospective advantage, and forgery. In an order filed 28 November 2000, the trial court granted Defendants' motion for partial summary judgment. Plaintiff filed a notice of appeal on 20 December 2000.

The pleadings and discovery submitted to the trial court reveal that in 1990, Plaintiff, an established architect, met Guerrier, an architectural intern working toward his professional license, in New York. In February 1995, after having worked together on several projects in New York, Plaintiff inquired if Guerrier would help him establish the Firm in North Carolina, and Guerrier agreed. They decided to name the Firm after Plaintiff as the Firm would benefit from Plaintiff's contacts and experience. In return for Guerrier assuming the management and operation of the Firm, Plaintiff offered Guerrier ownership of the Firm at some future point in time after Guerrier became licensed.

On 29 June 1995, Plaintiff executed documents to create the Firm, listing himself as the sole director and incorporator. The articles of incorporation authorized one hundred shares of capital stock, all of which Plaintiff issued to himself. Plaintiff's one hundred percent stock ownership of the Firm was evidenced by a security certificate (Security Certificate No. 1). Security Certificate No. 1 named Plaintiff as the holder of the stock and stated it was "transferrable only on the books of the [Firm] by the holder [t]hereof in person or by Attorney upon surrender of this Certificate properly endorsed." The space on the reverse side of Security Certificate No. 1 served to document any future transfer of the one hundred shares by Plaintiff to another person.

The articles of incorporation were subsequently filed with the North Carolina Secretary of State. On 27 September 1995, Guerrier received his New York architecture license, and Plaintiff and Guerrier began discussions of making Guerrier the sole owner of the Firm. During these discussions, Plaintiff stated he wanted to see a more long-term commitment from Guerrier before he transferred ownership of the Firm to him.

In January 1996, the Firm was refused a business loan due to Plaintiff's poor credit history. Because Guerrier had a good credit history, Plaintiff and Guerrier decided to present to the bank that Guerrier was the owner of the Firm. In accordance with this agreement, they asked the Firm's accountant to list Guerrier as the sole owner and one hundred percent shareholder of the Firm on all relevant corporate documents. Accordingly, from that point forward, all tax filings for the Firm reflected Guerrier as the sole owner.

On 1 January 1997, a meeting was held between Guerrier, Plaintiff, and the Firm's attorney Larry Hall (Hall). During that meeting, Guerrier claims he and Plaintiff "elected to go ahead and do the full one hundred percent sharehold[er] transfer," conveying complete ownership of the Firm to Guerrier. Guerrier's deposition testimony indicates they added Guerrier's name to the reverse side of Security Certificate No. 1 as transferee of the one hundred shares issued to Plaintiff and also recorded the transaction in the Firm's stock ledger. Plaintiff, however, did not sign the back side of Security Certificate No. 1. Plaintiff also claims he never delivered Security Certificate No. 1 to Guerrier. A copy of the registered transaction of Security Certificate No. 1 was submitted into evidence. This document indicates Security Certificate No. 1 was transferred by Plaintiff to Guerrier on 1 January 1997, at which time a new security certificate (Security Certificate No. 2) was issued to Guerrier.

Guerrier stated the transaction "finally culminated in July of 1997" during a meeting between him, Plaintiff, and Hall. At this time, Guerrier signed Security Certificate No. 2, which specifies Guerrier as the new holder of the one hundred shares of the Firm's stock. Guerrier claims Plaintiff then brought Security Certificate No. 2 to the corporate secretary to obtain her signature. Afterwards, Plaintiff placed the security certificate in the corporate record book. Plaintiff, on the other hand, asserts the stock transfer never took place. In support of his position, Plaintiff submitted into evidence Security Certificate No. 1 stating that it had never left his possession.

On 6 November 1999, Guerrier sent Plaintiff a letter informing him that he, Plaintiff, was no longer a member of the board of directors, no longer held a position with the Firm, would have to vacate his office immediately, and the Firm's name would be changed to The Atepa Group, P.A.

The record on appeal does not reflect who leased the office space in which the Firm is located. During oral arguments, Plaintiff's coun-

sel conceded the lease is in the Firm's name and not signed by Plaintiff in his individual capacity.

The dispositive issue is whether the trial court erred in granting Defendants' motion for partial summary judgment because it determined Guerrier to be the sole owner of the Firm based on either (I) a valid stock transfer of one hundred percent of the Firm's stock from Plaintiff to Guerrier, or (II) the doctrine of estoppel operating to bar Plaintiff from denying the validity of the stock transfer.

[1] We first note Plaintiff's appeal is interlocutory because the trial court did not dismiss all claims against Defendants, leaving the wrongful eviction action to be decided. *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 4, 362 S.E.2d 812, 815 (1987). Plaintiff, however, has met his burden of showing that a substantial right will be implicated if this Court does not hear this appeal. Plaintiff conceded during oral argument before this Court that the lease in issue for Plaintiff's remaining wrongful eviction claim was signed in the name of the Firm. While the record does not include a copy of the lease and Defendants were silent on the issue of the lease during oral argument, a risk of inconsistent verdicts remains because the question of ownership will also likely decide Plaintiff's wrongful eviction action.[3] *Id.* at 7, 362 S.E.2d at 816. As to the merits of this case, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1999).

I

*Stock Transfer*

[2] Under Article 8 of the Uniform Commercial Code, as codified in Chapter 25 of the North Carolina General Statutes, a valid transfer of a certificated security requires both the indorsement and delivery of the certificate by its holder to the transferee. *See* N.C.G.S. §§ 25-8-301 (1999), 25-8-304 (1999). " 'Indorsement' means a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document for the pur--

---

3. The issue of ownership was determinative to the trial court's order granting Defendants' motion for partial summary judgment.

pose of assigning, transferring, or redeeming the security[.]" N.C.G.S. § 25-8-102(a)(11) (1999). An indorsement made on the security certificate "does not constitute a transfer until delivery of the certificate on which it appears." N.C.G.S. § 25-8-304(c) (1999). Delivery, in turn, "occurs when: (1) [t]he purchaser acquires possession of the security certificate; [or] (2) [a]nother person . . . acquires possession of the security certificate on behalf of the purchaser[.]" N.C.G.S. § 25-8-301(a)(1)-(2) (1999). As against the transferor, however, "[i]f a security certificate in registered form has been delivered to [the] purchaser without a necessary indorsement . . . , a transfer is complete upon delivery and the purchaser has a specifically enforceable right to have any necessary indorsement supplied." N.C.G.S. § 25-8-304(d) (1999). A registered form is defined as "a form in which: (i) [t]he security certificate specifies a person entitled to the security; and (ii) [a] transfer of the security may be registered upon books maintained for that purpose by or on behalf of the issuer, or the security certificate so states." N.C.G.S. § 25-8-102(a)(13) (1999).

In this case, Security Certificate No. 1 names Plaintiff as the holder and states that it is "transferrable only on the books of the [Firm] by the holder [t]hereof in person or by Attorney upon surrender of this Certificate properly endorsed." Thus, we are presented with a security certificate in registered form. Accordingly, we need only consider whether the facts of this case present a genuine issue of material fact of whether Plaintiff delivered Security Certificate No. 1 to Guerrier.

As evidence of a valid delivery and transfer under N.C. Gen. Stat. §§ 25-8-301(a)(2) and 304(d), Guerrier points to the copy of the registered transaction of Security Certificate No. 1 as well as the Firm's stock ledger, both of which record a conveyance of Security Certificate No. 1 from Plaintiff to Guerrier. At trial, Plaintiff produced Security Certificate No. 1, which did not contain his signature, and claimed he had never relinquished possession of the certificate as the negotiations between Guerrier and him were still ongoing. As such, there was a genuine issue of material fact regarding delivery and the trial court erred in granting Defendants partial summary judgment on the basis of a valid stock transfer.[4]

---

4. Defendants assert Plaintiff brought Security Certificate No. 2 to the corporate secretary for her to sign and then placed the certificate in the corporate record book, thus delivering the security certificate to Guerrier. Because only delivery of Security Certificate No. 1 could convey title of the one hundred shares of the stock issued to Plaintiff, we reject this argument.

TUCKETT v. GUERRIER

[149 N.C. App. 405 (2002)]

## II

### Estoppel

**[3]** "The doctrine of estoppel rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result." *Thompson v. Soles*, 299 N.C. 484, 486, 263 S.E.2d 599, 602 (1980). A trial court may only grant a summary judgment motion based on the doctrine of estoppel "[w]here there is but one inference that can be drawn from the undisputed facts of a case." *Keech v. Hendricks*, 141 N.C. App. 649, 653, 540 S.E.2d 71, 75 (2000) (quoting *Creech v. Melnik*, 347 N.C. 520, 528, 495 S.E.2d 907, 913 (1998)). If, however, "the evidence raises a permissible inference that the elements of . . . estoppel are present, but where other inferences may be drawn from contrary evidence, estoppel is a question of fact for the jury." *Id.* at 653-4, 540 S.E.2d at 75.

Estoppel cannot arise until the instrument creating the estoppel has become effective. *Levi v. Mathews*, 145 F. 152, 157 (4th Cir. 1906) (citing *Smith v. Ingram*, 130 N.C. 100, 40 S.E. 984 (1902) and *Drake v. Howell*, 133 N.C. 163, 45 S.E. 539 (1903)); *Ingram*, 130 N.C. at 106, 40 S.E. at 986 (estoppel cannot arise where deed is void); *see* 28 Am. Jur. 2d *Estoppel and Waiver* § 7 (1966) (a void deed may not be made the basis of an estoppel).[5]

In this case, without a valid transfer of Security Certificate No. 1, the transaction between Plaintiff and Guerrier is void, leaving no room for the doctrine of estoppel to operate. On the other hand, if Plaintiff delivered Security Certificate No. 1 to Guerrier, the issue of estoppel would not be reached. Thus, the application of estoppel is inappropriate here.

### Summary

Because there are genuine issues of material fact regarding delivery of Security Certificate No. 1, the trial court erred in finding Guerrier to be the sole owner of the Firm and in granting partial summary judgment for Defendants. This case is therefore remanded for trial on the merits as to Plaintiff's claims for a declaratory judgment

---

5. While estoppel cannot arise if a transfer is *void*, it may, however, operate to enforce an otherwise *unenforceable* agreement. *See B & F Slosman v. Sonopress Inc.*, —— N.C. App. ——, ——, 557 S.E.2d 176, 179 (2001) ("in appropriate cases, equitable estoppel may override the statute of frauds so as to enforce an otherwise unenforceable agreement").

on the ownership of the Firm, wrongful conversion, tortious interference with contract and business relations, tortious interference with future relations and/or prospective advantage, forgery, and wrongful eviction.

Reversed and remanded.


Judges McGEE and THOMAS concur.